C.E. ATWELL and Lugene Atwell,
Plaintiffs–Respondents,

v.

JACK HENRY AND ASSOCIATES,
INC., Defendant–Appellant.

No. 15212.

Missouri Court of Appeals,
Southern District,
Division One.

April 18, 1988.

Ralph E. Hunt, Springfield, for plaintiffs-respondents.

Robert D. Kroeker, Linda S. Dickens, Connie J. Boysen, Sildon & Kroeker, P.C., Kansas City, for defendant-appellant.

GREENE, Presiding Judge.

Defendant, Jack Henry and Associates, Inc. (Jack Henry),[1] appeals from the trial court's judgment which decreed that plaintiffs, C.E. Atwell and Lugene Atwell (Atwells), were the fee simple owners of a strip of land 50 feet wide and 1,870 feet long lying south of the present right-of-

---

1. Where appropriate, "Jack Henry" will also refer to the individual of that name who was the chief operating officer of the corporation, and, as such, represented the corporation on all relevant acts mentioned in evidence that was introduced at trial.

way of U.S. Highway 60 in Barry County, Missouri. The trial court also ruled that Jack Henry was not entitled to recover the value of claimed improvements it had put on the disputed strip of land prior to notice of the Atwells' adverse claim to the property. We affirm.

All the land involved in this case lies south of the highway right-of-way. The land of the Atwells lies north of the tract owned by Jack Henry. The disputed strip is 50 feet in width and adjoins the north edge of Jack Henry's land. It is uncontested that common predecessors in title owned all the relevant tracts, unburdened by any public use, before the conveyances which precipitated this dispute were made.

On September 3, 1958, Lisle J. Wormington, Mabel Woolsey and Alvis Woolsey conveyed the disputed strip by quitclaim deed to Barry County. After reciting the legal description, the deed states: "For road purposes only." There is nothing in the record to show that Barry County adopted the deed in question and designated the strip as a public road, or that it expended any labor or money in improving it for road purposes. On the same day, the same three grantors conveyed the entire northern tract by warranty deed to Henry Sorensen, Marie Sorensen, and Ella E. Atwell. After giving a legal description of the tract including the disputed area, the deed excepted "a 50 foot strip off the south side of said tract for road purposes," which is the same strip of land quitclaimed for road purposes only to Barry County on the same day by Wormington and the Woolseys. Through a succession of conveyances, which used the same legal description as the deed just referred to, the Atwells became the owners of the northern tract.

On January 16, 1981, Christa Hallett, who was a successor in title to the earlier owners of the real estate she was conveying, conveyed to Jack Henry, by warranty deed, a 37 acre tract of land. This deed described what was evidently the entire tract owned by the common predecessor, followed by an express exception of every-

thing covered by the Atwell deed. Although this language fully excluded the disputed strip, this deed also recited an exception of the 50 foot strip that had been deeded to Barry County for road purposes. Apparently, this strip had been used as a public road many years earlier, but was abandoned when Highway 60 was rerouted, and was grown up in brush and weeds.

Jack Henry decided to construct an office building on its property, and immediately began clearing and grading the disputed strip so that it could be used as an access road to the building site. It had the disputed strip surveyed and staked out, water and telephone lines installed along the south edge of the strip to service the office building, and began construction of a fence along the north side of the strip. Mr. Atwell wrote Jack Henry a letter on July 31, 1981, advising that the Atwells owned the disputed strip, and instructed Jack Henry to cease the work being done on it. Jack Henry evidently ignored the letter and finished construction of the fence and two stone posts positioned near the entrance to the strip which barred the Atwells from using the disputed tract.

After the improvements were completed, Jack Henry, in November of 1981, evidently requested and received an undated quitclaim deed from Barry County signed by the three county judges, Bob Ray, Emil Schad, and Dave Sparkman. Their authorization to sign the deed on behalf of Barry County is not specified in the deed. The deed was to the 50 foot strip that had previously been quitclaimed to Barry County, and specified that the strip was quitclaimed "For road purposes only." This was followed on November 5, 1981, by still another quitclaim deed, which purported to convey to Jack Henry any interest Barry County had in the 50 foot strip. This deed was executed by Dick Sanders, who styled himself as a "commissioner" of Barry County, and evidently was an attempt to comply with § 49.280 RSMo 1978, which statute permitted the county court (county commission in its present form) to appoint

a commissioner (now called ex officio commissioner) to dispose of real estate owned by the county. This deed also contained a limitation that it was for road purposes only.

The Atwells then sued Jack Henry. The first count of their petition was an action to quiet title in which the Atwells requested the court to declare that they were the fee simple owners of the 50 foot strip being used by Jack Henry as a road. Count two was an action in ejectment, requesting that Jack Henry be ordered to (1) remove the fence and two stone posts it had put on the property, (2) restore the strip to its original condition, and (3) pay damages to the Atwells for unlawful use of the property.

In its amended answer and counterclaim, Jack Henry asserted that it was the fee simple owner of the 50 foot strip, by reason of the conveyances from Barry County to it, and, that even if the court found Jack Henry not to be the owner, it had made good faith improvements on the land in the value of $16,500 believing it had good title to the land and, for that reason, should be given compensation for the improvements.

The case was court-tried. At trial, the Atwells abandoned their claim for damages. Evidence was heard, the substance of which is set out above. Neither party requested separate findings of fact and conclusions of law.

In its judgment, the trial court declared the Atwells to be the fee simple owners of the 50 foot disputed strip, and denied Jack Henry's counterclaim for the value of the improvements. After noting an offer by the Atwells to do so, the court ordered them to grant the city of Monett, or other appropriate authority, a permanent easement to maintain the water line to Jack Henry's property, and to allow Jack Henry to use a portion of the strip as a road to reach its property until a road on its own property could be constructed, or for a period of six months, whichever event came first. The trial court also ordered Jack Henry to remove the fence and pillars within 60 days. This appeal followed.

Our duty is to uphold the trial court's judgment if it is supported by substantial evidence, is not against the weight of the evidence, and is not based on any erroneous declaration or application of law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In its first point relied on in this appeal, Jack Henry contends that the quitclaim deed of September 3, 1958, from Wormington and the Woolseys to Barry County conveyed a fee simple interest in the disputed strip and, therefore, when Barry County quitclaimed the strip to Jack Henry, it, not the Atwells, owned the disputed property. Jack Henry argues that this conclusion is justified for the reason that § 442.440, RSMo mandates that "[a]ll deeds, grants and conveyances made, acknowledged and recorded as other deeds conveying lands, tenements or hereditaments to any county, or the inhabitants of any county, and their successors, or to the governor, or any person, by whatever form of conveyance, for the use and benefit of any county, shall vest in such county, in fee simple, all the right, title, interest and estate which the grantor in such deed had, at the time of the execution thereof, in the lands thereby conveyed." This argument is not persuasive.

Jack Henry contends that because the statute uses the term "in fee simple," and speaks of a conveyance of all of the interest the grantor had in the property, that a party is prohibited from conveying to a county any estate or interest in property that is less than a fee simple absolute interest, regardless of the intended purpose of the conveyance.

If this argument were sound, then the 1958 quitclaim deed from the owners of the strip to Barry County conveyed a fee simple absolute interest in the land which, in turn, passed to Jack Henry in 1981, when Barry County conveyed to Jack Henry whatever interest the county had in the land.

The parties to this appeal have cited only one case where appellate treatment of § 442.440 or its similar predecessors was

utilized, and our independent research has not disclosed any other. The case cited was *Turner v. Clark County,* 67 Mo. 243 (1878). In *Turner,* the county received a sheriff's bond secured by a mortgage in settlement of a suit the county had brought against the sheriff upon his bond, because of delinquencies in the sheriff's accounts. When payment of the bond was not forthcoming, the county sued on the mortgage, obtained a judgment of foreclosure, bought the land at the foreclosure sale, and obtained a deed to it. The Supreme Court held that, by reason of a statute then in force, *Uses and Trusts,* 2 Wag.Stat., p. 1352, § 13, which statute used precisely the same language as § 442.440, the county, regardless of the wisdom of accepting the bond and mortgage in settlement of its suit against the sheriff, had the same right to buy a fee simple interest in real estate as an individual. We fail to see how this decision is of any aid and comfort to Jack Henry, as all it does is illustrate the apparent historical purpose of the original statute and its successors.

The progenitor of the present day § 442.440 is shown in the revised statutes of 1825, p. 243. This was an enactment of five sections, all under the title "An act to enable counties to make contracts, and hold and convey real estate." The first section of that enactment, with some unimportant differences in precise wording, is the same as present § 442.440. The other four sections of the 1825 act provide how a county conveys realty, enable a county to contract in the same manner as an individual, enable a county to appoint agents to contract in its behalf, and govern venue in legal actions involving counties.

■ The title of a legislative act may be given weight in ascertaining legislative intent and the true scope of a statute. *Bullington v. State,* 459 S.W.2d 334, 341 (Mo.1970). The title of the act of 1825, and the tenor of its associated parts, makes it clear that the purpose of the act was to enable counties to act as any other legal entity with regard to business, contracts,

real estate transactions, lawsuits and the like. Such legislative action was necessary, as a county must have authority conferred by law in order for it to act, and has only such powers as the legislature sees fit to delegate. *County Court of Ralls County v. United States,* 105 U.S. (15 Otto) 733, 737, 26 L.Ed. 1220 (1881). Specifically, "[counties] have no power to purchase land or hold the same unless it is given to them by statute." *Ray County v. Bentley,* 49 Mo. 236, 242 (1872).

■ A cardinal rule of statutory construction is to give the statute a reasonable interpretation in light of the legislative objective. *Collins v. Director of Revenue,* 691 S.W.2d 246, 251 (Mo. banc 1985). In making such interpretation, we must identify the problem the legislation was meant to correct. *Sermchief v. Gonzales,* 660 S.W.2d 683, 688 (Mo. banc 1983). When we apply these tests, it is evident that the intent of the legislature, in enacting the original act tracing to the present § 442.440, was to endow deeds to a county with the same characteristics "as other deeds," and to permit counties to take an absolute estate in all of the rights to land held by a grantor, but only if such was the specific intent of the grantor. This does not mean that a county takes a fee simple interest as a grantee regardless of the nature of the conveyance and the intent of the grantor. Such a construction would border on the ludicrous, as such a construction would confer upon counties a unique status not shared by individuals or other legal entities.

We also note that the construction of the statute urged by Jack Henry would run counter to the developed policy of public road law, which is a defined area separate and apart from general real estate law. Section 442.440 does not address the matter of public roads, but speaks generally of "deeds conveying lands, tenements or hereditaments." If Jack Henry's construction of this statute was adopted, it would run counter to the well settled law of Missouri that a conveyance of land followed by the

qualifying words "for road purposes only" is a strong, and almost conclusive, indicator that the interest conveyed is a mere easement, which doctrine arises from common sense recognition of the fact that long narrow strips of land, absent possible commercial factors having no application here, serve little or no practical function other than roads or rights-of-way. *Hartman v. J & A Development Co.*, 672 S.W.2d 364, 365 (Mo.App.1984); *Fischer v. Trentmann*, 672 S.W.2d 139, 141 (Mo.App.1984).

Jack Henry insists that the language of the statute is clear and unambiguous, leaving no room for statutory interpretation and, therefore, Barry County gained fee simple title from the quitclaim deed to it of the 50 foot strip. While we have no quarrel with the general principles of statutory interpretation cited by Jack Henry, the true intention of the framers of the legislation must be followed, and where necessary the strict letter of the act must yield to the manifest intent of the legislature. *BCI Corp. v. Charlebois Const. Co.*, 673 S.W.2d 774, 780 (Mo. banc 1984). In following this guideline, we are convinced that the legislature, in enacting § 442.440, intended to place counties in the same position as other legal entities in regard to conveyances of real estate, and did not intend to place counties in a favored position whereby they, as grantees, would receive a fee simple interest in the land where it was the obvious intent of the grantor to give them something less. Jack Henry's contention that Barry County received a fee simple interest in the 50 foot strip by reason of the 1958 deed has no merit. The point is denied.

In its second point relied on, Jack Henry contends that the trial court erred in concluding that Barry County had lost any interest it may have had in the 50 foot strip prior to the time Jack Henry bought the property, because the "road" had been abandoned. The precise language in the court's decree is as follows: "the Court finds that the fifty foot strip of land in question was conveyed to Plaintiffs, subject to a prior conveyance to Barry County 'for road purposes only'; that the road was abandoned so that the easement for road purposes terminated, and the fee remained vested in Plaintiffs."

Public roads, except state roads, may be established in three ways: (1) under the provisions of chapter 228, RSMo, (2) by prescription, or (3) by implied or common law dedication. *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983). In a common law dedication by deed of land for a county road, there must be an acceptance by the public through some action by the county court (now county commissioners), as no private person can establish, by unilateral act, a public road over his own property. *Hayes v. Kansas City*, 294 Mo. 655, 242 S.W. 411, 413 (1922). A case precisely in point is *Osburn v. Supreme Exp. & Transfer Co.*, 590 S.W.2d 360 (Mo.App.1979). In *Osburn*, the land owner attempted to convey to Morgan County by quitclaim deed "[a] strip of land (40) feet wide for a public road across my farm in Section 16, Township 40 North, Range 16 West, of the 5th Principal Meridian, as surveyed and located by the Highway Engineers of Morgan County, Missouri." In the face of appellant's assertion that the property description was so indefinite as to render location of the road impossible, the appellate court held:

> We conclude that the deed by Cooper in year 1923, even if sufficient to locate the roadway over his land, did not, without a public acceptance, amount to establishment of a public way. A county court alone has authority to establish a new county road—with or without petition. *Foster v. Dunklin*, 44 Mo. 216, 218 (1869). Thus, to constitute a common law dedication of a county road, there must also be an adoption of that deed by the county court—an action altogether lacking. *Vossen v. Dautel*, 116 Mo. 379, 22 S.W. 734, 735 (1893); *Hayes v. Kansas City*, 294 Mo. 655, 242 S.W. 411, 414 (1922). The quitclaim deed by Cooper—

absent acceptance by a proper authority —was without efficacy to invest the Upper Road as a public way.

*Osburn*, supra, at 363. The same reasoning applies here.

■ While common law dedication of land for use as a road by the general public can occur without a showing of formal acceptance by the governing body, such a dedication can be established if, and only if, there is strong conclusive evidence that the owner intended to dedicate the land for public use, that the land was accepted by the public, and that it was used by the public. *City of Alexandria v. Kara Baptist Academy, Inc.*, 680 S.W.2d 416, 417 (Mo.App.1984). Here, there was not a scintilla of evidence that the 50 foot strip was ever accepted or used by the public. This being so, the disputed strip was never established as a county road. If it was never established, it could not have been abandoned, but that fact is not of any benefit to Jack Henry. Barry County could not give away something it never had, and so its deeds to Jack Henry in November of 1981, on which Jack Henry claims its title, conveyed nothing. The conclusive language in the decree that Barry County abandoned the real estate in question was superfluous, but did not affect the merits of the trial court's decision that Barry County had no legal interest in the 50 foot strip that it could pass on to Jack Henry. The point has no merit.

In its final point, Jack Henry claims the trial court erred in denying its claim for the value of improvements made on the disputed strip, which totaled over $17,000. Jack Henry contends the improvements were made prior to notice by plaintiffs of their interest in the disputed property, and, therefore, the corporation was entitled to recover by reason of what is commonly called the "betterment act," the pertinent portions of which are as follows:

**524.160. Defendant may recover compensation for improvements, when**

If a judgment or decree of dispossession shall be given in an action for the recovery of possession of premises, or in any real action in favor of a person having a better title thereto, against a person in the possession, held by himself or by his tenant, of any lands, tenements or hereditaments, such person may recover, in a court of competent jurisdiction, compensation for all improvements made by him in good faith on such lands, tenements or hereditaments, prior to his having had notice of such adverse title.

**524.170. Petition—contents**

The plaintiff in his petition shall set forth the nature of his title, the length of his possession and the kind and value of the improvements made; and shall also aver therein that he entered into the possession of the land, believing that he had good title thereto, and that he made the improvements specified in the petition in good faith, under the belief that he had good title to the land, and shall be verified by his affidavit thereto annexed.

**524.240. If plaintiff gives notice, in writing, compensation shall not be recovered, etc.**

If the plaintiff shall give the occupying claimant notice, in writing, of his claim, and of the nature thereof, such notice shall bar the occupying claimant, and all persons claiming from or through him, of compensation for improvements made after such notice.

It has been said that these statutes allow compensation to an ousted party for improvements "made in the belief that the title he held was indefeasible," and that the purpose of the law is not only to permit return of possession of land to the proper party, but also to protect the dispossessed occupant for what he did "on the faith of a title supposed to be good." *Gallenkamp v. Westmeyer*, 116 Mo.App. 680, 93 S.W. 816, 818 (1906). *See also Martin v. McCabe*, 358 Mo. 118, 213 S.W.2d 497, 501 (1948).

■ It is difficult to see how Jack Henry can claim that it had a good faith belief that the title it held was indefeasible. Virtually all of the work done by Jack Henry on the disputed strip was complete by the

time the deeds were obtained from the county on which the claim to title in the present case were based. In his own testimony, Jack Henry, the individual, admitted that the "title to the strip was not clear," but that the lady who sold it to him believed that "I could use it unless the county voiced some claim to it." By letter dated July 31, 1981, Mr. Atwell advised Jack Henry that the Atwells would not permit Jack Henry "trying to claim the road and land on my side as your own...." The letter also made it clear that the Atwells did not agree to any improvements being made on the strip, and would not be responsible for any of the cost. Jack Henry proceeded at its peril in the face of such warning. The improvements were of no benefit to the Atwells. The water line, concerning which the Atwells agreed to grant a permanent easement for its maintenance, still benefits Jack Henry. In addition, Jack Henry was granted temporary use of the strip until it developed its own access road.

The evidence was sufficient to show a lack of good faith on the part of Jack Henry. It follows that the trial court was correct in denying Jack Henry's counterclaim for the value of the improvements. The point is denied.

Judgment affirmed.

CROW, C.J., and HOLSTEIN, J., concur.