Donald Edward BUSCH and Alta Wynnell Busch, Plaintiffs/Appellants/Cross–Respondents,

v.

HURRICANE DECK HOLDING COMPANY, Defendant/Respondent/Cross–Appellant,

and

Community Bank of the Ozarks and Central Bank of Lake of the Ozarks, Defendants/Respondents.

Nos. 19002, 19004.

Missouri Court of Appeals, Southern District, Division Two.

July 27, 1994.

Motion for Rehearing and Transfer to Supreme Court Denied Aug. 15, 1994.

Kevin Schehr, Woolsey and Yarger, Versailles, for plaintiffs/appellants/cross-respondents.

Gregory D. Williams, Williams & Hajicek, P.C., Sunrise Beach, for defendant/respondent/cross-appellant.

CROW, Judge.

Plaintiffs, Donald Edward Busch and Alta Wynnell Busch, husband and wife, sued Defendants, Hurricane Deck Holding Company ("HDHC"), Community Bank of the Ozarks, and Central Bank of Lake of the Ozarks, to establish a prescriptive easement for use of a roadway or, alternatively, a public road by common law dedication, across land owned by HDHC and encumbered by liens in favor of the banks. HDHC counterclaimed for breach of warranty of title. HDHC pled the claim was assigned to it by its predecessors in title, who could have asserted it against Plaintiffs.

The trial court heard the case without a jury and entered judgment for (a) Defendants on Plaintiffs' petition, and (b) Plaintiffs on HDHC's counterclaim.

Plaintiffs appeal from part "(a)" of the judgment; HDHC appeals from part "(b)." The issues presented by the appeals are easier addressed after a synopsis of the relevant evidence.

In 1941, W.H. McCorkle and his wife, Alta K. McCorkle, residents of Texas, bought a tract of land abutting the Lake of the Ozarks in Camden County. Plaintiff Alta Wynnell Busch ("Alta"), a daughter of the McCorkles, was born that year.

Alta testified she accompanied her parents on trips to the property from the time they bought it. Asked how frequently, she answered, "Probably on the average of two times a year, sometimes for a short period and others for as much as a month or two."

An unpaved road crossed the tract at the time the McCorkles bought it. According to Alta, the road was then known as "Harmony Cove Road."

Adjacent to the McCorkles' tract, on land also abutting the lake, were a few rental cabins known as "LaHouquet's Camp." Alta recalled that the ownership of LaHouquet's Camp changed in 1946. The new owners built a home, changed the name to "Harmony Cove Resort," and continued renting the cabins to vacationers. On their trips to their property, the McCorkles sometimes stayed at Harmony Cove Resort. Harmony Cove Road provided the only access to the resort.

About 1950 or 1951, Alta's father began building a cabin on the McCorkle tract. When it was finished, they stayed there on their visits. They reached the cabin by Harmony Cove Road.

After Alta married, she, her husband and their children made trips to the cabin, reaching it by Harmony Cove Road.

Harmony Cove Resort remained in operation until sometime in the 1970's. Throughout its existence, vacationers reached it by Harmony Cove Road.

On a date unrevealed by the record, but prior to July 28, 1981, W.H. McCorkle died. On July 28, 1981, his widow deeded the tract to the McCorkles' three children: Alice Kathryn Stone, Jerry Willard McCorkle, and Alta.

That trio owned the tract until November, 1984, when they divided it into two parcels. According to a survey, one parcel contained about 54 acres; the other, about 127.

The division was accomplished by two warranty deeds, each of which was signed by the trio and their respective spouses. By one deed, Alta and her husband, Plaintiff Donald Edward Busch, received the 54–acre parcel. By the other, Alice Kathryn Stone and Jerry Willard McCorkle—but not their spouses—received the 127–acre parcel.

The 54–acre parcel abuts what was formerly Harmony Cove Resort. Alta testified the resort land is now "privately owned individual properties." The 54–acre parcel includes the site where Alta's father built the cabin. Plaintiffs, who reside in Illinois, now have a trailer parked there.

Harmony Cove Road, as it proceeds away from the lake in a southwesterly direction across the 54–acre parcel, enters the 127–acre parcel. It continues generally south across the 127–acre parcel until it meets a county road identified as F–12–S. The intersection lies in the 127–acre parcel. Harmony Cove Road ends at the intersection.

Both of the 1984 deeds contained this proviso: "Subject to all restrictions, reservations, conditions and easements of record and to all existing roads and power lines, whether of record or not."

According to one of HDHC's pleadings, Alta's brother, Jerry Willard McCorkle, and his wife subsequently deeded their interest in the 127–acre parcel to Alta's sister, Alice Kathryn Stone, and her husband. We find no copy of that deed in the record.

The record does contain a warranty deed signed December 31, 1989, by Alice Kathryn Stone and her husband, conveying the 127–acre parcel to HDHC. That deed did not mention any existing roads.

Alta testified that she and her husband received a letter in March, 1991, from the president of HDHC "questioning our right to travel across the road." Evidently, that led to this lawsuit.

A supervisor of the Camden County Road and Bridge Department testified that a part of Harmony Cove Road, beginning at its southern terminus at Road F–12–S and proceeding north, is now a county road. It is designated F–12–SB. That came about at the instance of HDHC after it acquired the 127–acre parcel. Before that, none of Harmony Cove Road was a county road.

The segment of Harmony Cove Road that is now a county road does not extend completely across HDHC's land to Plaintiffs' land. The dispute in this case is about the segment that is not a county road, i.e., the segment extending northeasterly from the point where the county portion ends to the boundary of Plaintiffs' land. We henceforth refer to that segment as "the disputed segment."

The trial court ruled Plaintiffs failed to establish an easement by prescription over the disputed segment. The trial court also rejected Plaintiffs' hypothesis that the disputed segment had become a public road by common law dedication. As to that theory, the trial court held:

"Clearly this road was never accepted by the Camden County Commission. Further, there was no evidence of any expenditure of public funds or labor on the road in question. Plaintiffs could not prove the establishment of a road under § 228.190, RSMo and so they alleged a common law dedication. One must examine the evidence to determine if the Plaintiffs proved an intent to dedicate the roadway and its use as a public road. The Court finds that the evidence was insufficient to establish the intent to make this a public road."

■ The first of Plaintiffs' three points relied on asserts the trial court erred in finding the evidence insufficient to establish the intent to dedicate the road to the public. Plaintiffs argue, "[T]he evidence presented by the Plaintiffs showing the intent to dedicate the road to the public was uncontroverted, and met [their] burden of proof on this element as established by Missouri case law dealing with common law dedication of a road."

Plaintiffs cite *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504, 507–08[4–7] (Mo. banc 1993), which holds:

"Common law dedication awards the public the use of the land in dispute and is proven by showing: (1) that the owner, by unequivocal action, intended to dedicate the land to public use; (2) that the land dedicated was accepted by the public; and (3) that the land dedicated is used by the public. *Haertlein, et al., v. Rubin,* 195 S.W.2d 480, 483 (Mo.1946); *Connell, et al. v. Jersey Realty & Investment Co.,* 352 Mo. 1122, 180 S.W.2d 49, 52 (1944). The intention of the owner to set apart land for public use is the foundation of every dedication. *Connell,* 180 S.W.2d at 52. The acts establishing a dedication must be unequivocal, indicating expressly or by plain implication, a purpose to create a right in the public to use the land. *Id.* When there is no actual intention, it is possible that an owner's actions may nevertheless evince an intention to dedicate. *Id.* In such circumstances, because dedication is a theory premised on estoppel rather than on an affirmative grant, the owner can be precluded from resuming rights over the property if the public acts upon the owner's manifestations. *Id.* at 52–53."

In addition to the evidence already reported, Alta testified without contradiction that since 1941, no one had ever barricaded Harmony Cove Road, that the owners of the property that was formerly Harmony Cove Resort use the road to reach their respective properties, and that the mail carrier uses the road to deliver mail to Plaintiffs' box and boxes of two owners of property that was formerly Harmony Cove Resort. Additionally, during the 1950's when Alta's father was building the cabin, suppliers of building materials used the road for deliveries. Alta also testified that when Harmony Cove Resort was in operation, a school bus used the road occasionally.

The Camden County Road and Bridge Department supervisor, mentioned earlier, was asked about Harmony Cove Road. His testimony:

"Q  ... prior to the county taking over this road, to your knowledge would that have been a public road or a private road, as you understand those terms to mean?

A  Public, to me.

Q  Prior to the time the county took it over?

A  As for other people to use through it, I would think it would be a public road, people could use it.

Q  Okay. What does a public road mean to you?

A  No restrictions, people can travel it.... Unless it was posted.

. . . .

Q  I take it from your response ... that there are public roads that are used by the public that are not county roads; is that correct?

A  That's correct.

Q  And they are free and open to the use of the public, are they not?

A  That's correct.

Q  Even though you don't maintain them?

A  That's correct.

Q  They don't belong to private individuals, they belong to the public?

A  That's correct.

. . . .

Q  You've seen lots of those roads in Camden County, haven't you?

A  I have, yes.

. . . .

Q  [F–12–SB is] a public road, isn't it?

A  SB is the county maintained road.

Q  And it's public road from that point on, isn't it?

A  I would assume so, yes."

Plaintiffs' uncontradicted evidence showed that from 1941 until 1991, persons going to and from the site occupied originally by LaHouquet's Camp, and later by Harmony Cove Resort, and currently by individual owners, used Harmony Cove Road (and no other route) without interference or objection by Alta's parents, Alta, her siblings, or anyone else. It is inferable from the 1984 deeds that Alta and her siblings believed Harmony Cove Road was a public road, as those deeds provided that the land described therein was conveyed subject to all existing roads, whether of record or not. In that regard, Alta testified:

"Q . . . at the time that those deeds were executed, you and your relatives understood that they were subject to this roadway?

A Yes.

Q No question in your mind about that?

A No."

Plaintiffs insist the uncontradicted evidence established that Harmony Cove Road became a public road by common law dedication long before HDHC challenged Plaintiffs' right to use it in 1991.

Defendants remind us that our review is governed by Rule 73.01(c), Missouri Rules of Civil Procedure (1994), as construed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.

Defendants, as we understand them, maintain that under the above standard, the trial court's finding that the evidence was insufficient to establish an intent to dedicate Harmony Cove Road for public use is unassailable.

Defendants presented no evidence contradicting Plaintiffs' evidence on the issue of intent to dedicate Harmony Cove Road for public use. Although we are mindful that the trial court was not obliged to believe any of the testimony of any witness, *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988), we find no indication that the trial court disbelieved any of Plaintiffs' evidence on that issue. Instead, it appears to us that the trial court concluded Plaintiffs' evidence was insufficient as a matter of law to demonstrate an intent to dedicate Harmony Cove Road for public use. Questions of law are reserved for the independent judgment of the reviewing court. *City of Cabool v. Mo. State Board of Mediation*, 689 S.W.2d 51, 54[4] (Mo. banc 1985).

As we have seen, when Alta's parents bought the tract in 1941, Harmony Cove Road went across it to LaHouquet's Camp. From 1941 until December 31, 1989, when Alta's sister, Alice Kathryn Stone, and her husband deeded the 127–acre parcel to HDHC, the public used Harmony Cove Road as the sole access to that site, unimpeded by Alta's parents, Alta, or her siblings. Whether Alta's parents assumed Harmony Cove Road was a public road when they bought the tract in 1941 is a subject on which the record is silent. However, from 1941 to December 31, 1989, Alta's parents, Alta, and her siblings continuously evinced an intent that Harmony Cove Road be used by the public (as it was). There was no evidence even arguably indicating any other intent.

We hold the trial court erred as a matter of law in declaring the evidence insufficient to establish an intent to create a right in the public to use Harmony Cove Road.

Perhaps anticipating our holding, Defendants argue the trial court was nonetheless correct in ruling there was no common law dedication because:

". . . Camden County never accepted the road in that [HDHC] never took any steps to dedicate the entire portion of the road to the county and the county never accepted the roadway."

In support of that argument, Defendants cite the following passage from a decision of this Court, *Atwell v. Jack Henry and Associates, Inc.*, 748 S.W.2d 929, 934 (Mo.App.S.D. 1988):

"In a common law dedication by deed of land for a county road, there must be an acceptance by the public through some action by the county court (now county commissioners), as no private person can establish, by unilateral act, a public road over his own property."

Defendants fail to recognize the difference between *Atwell* and the instant case. In *Atwell*, the owners of a tract of land signed a quitclaim deed in 1958, conveying a strip to Barry County for "road purposes only." There was no showing that the county accepted the deed, designated the strip a public road, or expended labor or public money to improve it. Apparently, the strip had once been used as a public road, but was abandoned when a highway was rerouted. Ultimately, the strip was "grown up in brush and

weeds." The dispute in *Atwell* was between successors in title to the 1958 owners and a corporation to which the county purported to convey the strip in 1981. *Id.* at 931.

This Court noted the well settled Missouri law that a conveyance of land followed by the qualifying words "for road purposes only" is a strong, and almost conclusive, indicator that the interest conveyed is a mere easement, not an estate in fee. *Id.* at 933–34. This Court further noted there was no evidence that the strip was ever used by the public after the 1958 quitclaim deed to the county. *Id.* at 935. Therefore, this Court held the strip never became a *county* road, hence the county could not deed to the corporation something the county never owned. *Id.*

The difference between *Atwell* and the instant case is obvious. *Atwell* involved an effort to create a *county* road by a *deed* to the county. The issue in the instant case is whether Harmony Cove Road became a *public* road by common law dedication over a 50–year period.

*Atwell* recognized the law of common law dedication:

> "While common law dedication of land for use as a road by the general public can occur without a showing of formal acceptance by the governing body, such a dedication can be established if, and only if, there is strong conclusive evidence that the owner intended to dedicate the land for public use, that the land was accepted by the public, and that it was used by the public."

*Id.* at 935[7].

The instant case is governed by *Patterson v. Null,* 751 S.W.2d 381, 386[7, 8] (Mo.App. S.D.1988), where this Court held:

> "A claim of common law dedication may prevail absent a formal dedication if there is evidence that the owner clearly showed his intent to dedicate the land for public use and that the land was accepted by the public and was so used by the public. *Hoechst v. Bangert,* 440 S.W.2d 476, 478 (Mo.1969); *City of Alexandria v. Kara Baptist Academy, Inc.,* 680 S.W.2d 416, 417 (Mo.App.1984). The dedication is not

required to be accepted by governmental authority, so long as it is in fact accepted by the public as demonstrated by the use made of it, which period of use need not exceed the statute of limitations under § 516.010. *Hoechst v. Bangert, supra,* 479."

Here, the uncontradicted evidence showed use of Harmony Cove Road by the public from 1941 to 1991. In such circumstances, as explained above by *Patterson,* acceptance by governmental authority is not required for creation of a public road by common law dedication.

We hold the record establishes, as a matter of law, that Harmony Cove Road became a public road by common law dedication long before HDHC challenged Plaintiffs' right to use it in 1991. Plaintiffs' first point is therefore meritorious and requires reversal of the part of the judgment denying Plaintiffs' petition. Having decided that, we need not consider Plaintiffs' other two points. We must, however, determine what relief the trial court should grant Plaintiffs on remand.

Attached to Plaintiffs' petition as Exhibit F is a description, by courses and distances, of what we glean from the evidence is Harmony Cove Road, from its southern terminus at Road F–12–S to its northern terminus at the old LaHouquet's Camp site. That description tracks a road shown on a plat received in evidence as Plaintiffs' Exhibit 1.

The description on Exhibit F describes a part of the road as 40 feet wide, and another part as 50 feet wide. However, photographs and a videotape received in evidence at trial indicate those widths may be inaccurate. Inasmuch as the trial court denied Plaintiffs' petition, the trial court did not reach the issue of width.

With the record in that posture, we conclude the proper disposition of Plaintiffs' appeal is to reverse the portion of the judgment denying Plaintiffs' petition and remand the case to the trial court with directions to (1) determine the correct width of the road described on Exhibit F, and (2) enter judgment that the road (in its entirety, not just the disputed segment) is a public road.

This brings us to HDHC's appeal from the part of the judgment denying its counterclaim.

The counterclaim, as we comprehend it, is based on the 1984 warranty deed whereby Plaintiffs, together with Alice Kathryn Stone and her husband, plus Jerry Willard McCorkle and his wife, conveyed the 127–acre parcel to Alice Kathryn Stone and Jerry Willard McCorkle.

The theory pled in the counterclaim is: (a) in the 1984 deed, Plaintiffs covenanted that the 127–acre parcel was free and clear of encumbrances and they would warrant and defend the title of their grantees and the latters' assigns against all lawful claims and demands; (b) Plaintiffs' claim that Harmony Cove Road is a public road is in derogation of the title Plaintiffs warranted in the 1984 deed, and constitutes a breach of the covenant of title; (c) by an instrument executed June 4, 1993, Alice Kathryn Stone and her husband assigned to HDHC all of their rights and claims against Plaintiffs under the 1984 deed; and (d) as a result of Plaintiffs' breach of the covenant of title, HDHC incurred attorney fees and expenses in this action. HDHC's president testified HDHC's attorney fees totaled $5,000.

■ We begin our analysis of HDHC's appeal by noting that an assignee acquires no greater rights than the assignor had at the time of the assignment. *Carlund Corp. v. Crown Center Redevelopment Corp.,* 849 S.W.2d 647, 650[6] (Mo.App.W.D.1993); *Centennial State Bank v. S. E. K. Construction Co., Inc.,* 518 S.W.2d 143, 147 (Mo.App.1974); *Securities Inv. Co. v. International Shoe Co.,* 5 S.W.2d 682, 684 (Mo.App.1928). Consequently, the counterclaim hinges on whether Alice Kathryn Stone and her husband had a cause of action against Plaintiffs under the 1984 deed. If the Stones had none, HDHC acquired none by the assignment.

Alice Kathryn Stone's husband was not a grantee in the 1984 deed. HDHC fails to explain how he had a cause of action under it. Whether there may be some theory for a cause of action by a husband under a warranty deed to his wife (but not to him) is a subject about which we need not speculate.

In *Fairmont Foods Co. v. Skelly Oil Co.,* 616 S.W.2d 548 (Mo.App.W.D.1981), cited by Plaintiffs, a grantee discovered there was a limitation of access to land conveyed to it by warranty deed. The deed conveyed the land "subject to easements, ... restrictions...." The Western District of this Court upheld a directed verdict against the grantee on its breach of warranty claim against the grantor, stating:

> "Use of the term 'subject to' in a deed conveying an interest in real property is a qualification of the estate granted. 23 Am. Jur.2d *Deeds* § 217. Thus, the property conveyed was the tract of land qualified by, or including the access limitation."

*Fairmont Foods,* 616 S.W.2d at 553[5].

An attentive reader will recall that the 1984 deed which conveyed the 127–acre parcel to Alice Kathryn Stone and Jerry Willard McCorkle contained the proviso that the parcel was subject to, among other things, all existing roads. The undisputed evidence established that Harmony Cove Road was an existing road on the 127–acre parcel at the time of that conveyance. Consistent with *Fairmont Foods,* we hold Harmony Cove Road was excepted from the warranties in the 1984 deed. The trial court was therefore correct in denying HDHC's counterclaim.

The part of the judgment denying Plaintiffs' petition is reversed, and the case is remanded to trial court, which is instructed to proceed according to the directions set forth earlier in this opinion. The part of the judgment denying HDHC's counterclaim is affirmed.

FLANIGAN, P.J., and GARRISON, J., concur.