Charles **EARLS** and Scottie Earls, husband and wife, and James Maze and Jeannette Maze, husband and wife, Plaintiffs–Respondents,

v.

**MAJESTIC POINTE, LTD.,** a Missouri corporation, Defendant–Appellant.

No. 21017.

Missouri Court of Appeals, Southern District, Division Two.

July 2, 1997.

Rehearing Denied July 24, 1997.

Kendall R. McPhail, Thomas M. Benson, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, for defendant–appellant.

Gail L. Fredrick, Fredrick, Rogers & Vaughn, P.C., Springfield, for plaintiffs–respondents

Before CROW, P.J., and PARRISH, J., and MONTGOMERY, C.J.

PER CURIAM.

Defendant, Majestic Pointe, Ltd., (MPL) a Missouri corporation, appeals from the trial court's judgment granting the relief requested by Plaintiffs[1] and denying the relief requested by MPL in its counterclaim. The predominant issues in this case involve the validity of a 1989 zoning change regarding property now owned by MPL and the right to use a road providing access to Plaintiffs and MPL's respective tracts of real estate.

Plaintiffs' "Petition for Declaratory Judgment," filed July 1, 1994, contained three counts. Count I, a declaratory action, sought to rescind a Division III Permit No. 00087 issued by the Taney County Planning and Zoning Commission on August 14, 1989, to Majestic Pointe, Inc., a Kansas corporation, which rezoned an agricultural tract to a condominium development. As grounds for relief, Plaintiffs alleged that the permit was void because Majestic Pointe, Inc., did not own the property described in the rezoning application and that, in any event, the permit had lapsed for failure to renew within a one-year time frame as required by Taney County's zoning code.[2] Count II sought a judicial determination that a road through Friendly Hills Subdivision (where Plaintiffs reside) providing access to MPL's property is private and that MPL had no right to use the road. Count III requested that MPL be permanently enjoined from using the road through Friendly Hills Subdivision.

MPL's amended counterclaim alleged malicious prosecution in Counts I and II against Plaintiffs for pursuing an appeal of MPL's grading permit and a belated appeal of the 1989 rezoning permit to the Taney County Board of Adjustment and to the Taney County Commission. Count III alleged abuse of process against Plaintiffs for filing the instant suit and the aforementioned appeals.

After a bench trial, the trial court entered a judgment on April 23, 1996, which (1) declared that the 1989 rezoning permit was "void and unlawful" and that it was "revoked and rescinded," (2) decreed that the road through Friendly Hills Subdivision was private and that MPL had no right to use the road, (3) ordered that MPL and its agents, servants, and employees be permanently enjoined from using the road, and (4) found in favor of Plaintiffs on Defendant's counterclaim for malicious prosecution and abuse of process. Each of those results are the subject of this appeal.

Shortly after the filing of Plaintiffs' petition, the trial court overruled MPL's amended motion to dismiss Count I of Plaintiffs' petition. The motion alleged, in pertinent part, that the trial court lacked subject matter jurisdiction because Plaintiffs failed to exhaust their administrative remedies by failing to timely file and pursue their remedies provided for in chapter 64.[3] MPL again raised this issue, to no avail, during trial.

MPL's first point relied on claims the trial court lacked subject matter jurisdiction in that Count I for declaratory judgment was an attack on the validity of the 1989 rezoning of MPL's property after Plaintiffs failed to appeal the rezoning to the Taney County Board of Adjustment within three months of the issuance of the permit as required by Taney County's zoning code and § 64.870.[4]

According to MPL, "[i]t is well settled in Missouri that Chapter 64 RSMo. provides the remedy for review of a county zoning decision to the exclusion of an action for declaratory judgment or judicial review un-

---

1. The Plaintiffs are Charles and Scottie Earls and James and Jeannette Maze. We refer to them collectively as Plaintiffs in this opinion.

2. Taney County's zoning regulations are collected in a document entitled "Taney County Development Guidance Code." We refer to this code when speaking of Taney County's zoning regulations in this opinion.

3. Statutory references are to RSMo 1994 unless otherwise indicated.

4. MPL's first three points relied on are interrelated. Our discussion and disposition of Point I necessarily resolves all three points even though we do not mention them separately.

der Chapter 536 RSMo." In support of this position, MPL relies on *State ex rel. Forget v. Franklin County Planning and Zoning Comm'n*, 809 S.W.2d 430 (Mo.App.1991), *Carter v. Greene County*, 765 S.W.2d 665 (Mo.App.1989), and *American Hog Co. v. County of Clinton*, 495 S.W.2d 123 (Mo.App. 1973).

It is undisputed that Plaintiffs failed to timely avail themselves of the right to appeal the 1989 rezoning decision to the Taney County Board of Adjustment as allowed by § 64.870.[5] This statute provides that an appeal from such decision must be made to the county board of adjustment within a period of not more than three months after a hearing and decision by that board. An aggrieved person is provided a further right of review by writ of certiorari to the circuit court. The statute then provides for a still further appeal to this Court.

Taney County's zoning code, Chapter III, Section VI, paragraph 2, emphasizes the availability of the right to appeal. That provision states:

RSMo 64.870 grants the right of appeal to any person aggrieved by his or her inability to obtain a permit, by the issuance of a permit, or by any other decision made in the administration of these codes (such as a particular condition imposed by a permit). All appeals shall be heard by the Board of Adjustment.

The next paragraph in the code states that appeals must be filed within three months of the decision being appealed.

Plaintiffs did not follow the procedure set forth in § 64.870. Instead, they chose to file a declaratory judgment action almost five years after the zoning change based upon § 536.100 which reads:

Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof, as provided in sections 536.100 to 536.140, unless some other provision for judicial review is provided by statute; *provided, however, that nothing in this chapter contained shall prevent any person from attacking any void order of an agency at any time or in any manner that would be proper in the absence of this section.* ... (Emphasis added.)

With respect to the rezoning in this case, § 64.870 specifically provided for the manner of reviewing the determination to rezone. Whether § 536.100 provides Plaintiffs with an alternative review procedure is the crux of the issue before us.

The exclusiveness of the remedy provided by § 64.870 is made clear in the three cases cited by MPL. In *American Hog*, plaintiff brought a declaratory judgment suit for a determination that it had the right to operate its hog feeding farm as a non-conforming use under the Clinton County Zoning Order and Subdivision Regulations. Plaintiff never appealed the Clinton County Planning Commission's order (finding a violation of its regulations) to the County Board of Adjustment as allowed by § 64.660.[6] Plaintiff claimed its suit was authorized by §§ 527.020 and 536.050, the Administrative Procedure Act.

On appeal, the court determined, *sua sponte*, that subject matter jurisdiction did not exist as to plaintiff's declaratory judgment action since the procedure for review under § 64.660 had not been followed. 495 S.W.2d at 127. The case was remanded for dismissal of plaintiff's petition.

In reaching this result, the court first determined that § 536.050[7] did not apply because the zoning order did not constitute agency rule making but, instead, involved a "contested case" within the terms of § 536.100. *Id.* at 126. The court further determined that the provisions of § 536.100

---

5. Taney County, a third-class county, adopted county zoning and planning under the provisions of § 64.800 to § 64.905.

6. Section 64.660 applies to planning and zoning in second- and third-class counties. Section 64.870 alternatively applies to planning and zoning in second- and third-class counties. *See*

§ 64.905. Both statutes in question are almost identical.

7. Section 536.050 authorizes declaratory judgments respecting the validity of an administrative rule or a threatened application thereof.

did not apply to plaintiff's case "if 'some other provision for judicial review is provided by statute'; and § 64.660 does make 'other provisions'." *Id.* The court also said that plaintiff's suit was not "authorized under the general Declaratory Judgment Act, § 527.020. The declaratory judgment procedure cannot be used where a different specific statutory method of review is provided." *Id.* Specifically, the court stated:

> The principle to be applied here is essentially the same as that where a party seeks to escape the limitations of a special type of statutory review by trying to resort to the appeal provisions contained in the Administrative Procedures Act, Chapter 536 and Rule 100. The Missouri courts have consistently held that this may not be done and that the special statutory method of appeal is exclusive.

*Id.* at 127.

This Court decided *Carter* with substantial reliance on *American Hog* because the facts and procedure used in both cases were almost identical. Following *American Hog,* this Court held that since plaintiff "did not avail herself of the statutory procedure for judicial review of the administrative decisions in question, the trial court had no jurisdiction to hear evidence and enter judgment in the declaratory judgment case. Therefore, the judgment entered is void." 765 S.W.2d at 671.

Similarly, in *Forget,* the appellants contested the county planning and zoning commission's approval of a plat. Both the county board of adjustment and the county commission refused to hear appellants' appeal of that decision. Appellants filed a petition in mandamus in circuit court. The court of appeals affirmed dismissal of the mandamus action based on lack of subject matter jurisdiction for failure to exhaust administrative remedies. The court said:

> It has long been the rule that a party aggrieved by an administrative zoning decision who requests an appeal or review of the Board's action must exhaust its administrative remedies before it can resort to an action at law or equity.

809 S.W.2d at 432. The court observed that after the board of adjustment refused to hear

the appeal, "Appellants then should have filed a petition for a writ of certiorari with the circuit court stating the illegality of the board's action and asking for relief" under the provisions of § 64.870.2. *Id.*

■ In this case, Plaintiffs followed the same procedure condemned in *American Hog* and *Carter.* Those cases leave no doubt that the trial court lacked subject matter jurisdiction on Count I of Plaintiffs' petition because Plaintiffs sought a judgment declaring that the 1989 rezoning was invalid without following the appeal procedure mandated by § 64.870. However, this conclusion does not resolve the issue.

Plaintiffs urge that the trial court had subject matter jurisdiction under the proviso in § 536.100 which allows a person to attack a "void order of an agency at any time." This provision was persuasive with the trial court. Based on *State ex rel. Manchester Bank v. Enright,* 584 S.W.2d 416 (Mo.App. 1979), we view the provision otherwise.

In *Manchester Bank,* the director of finance issued an order granting a charter to a new bank over the objections of a competing bank. The competing bank's appeal to the State Banking Board was untimely filed. Subsequently, in its prohibition action in the appellate court, the competing bank argued that the trial court had jurisdiction under § 536.100 because the director's original order was void and could be attacked anytime on the basis that the five incorporators were straw parties for a bank holding company, a violation of chapter 362.

The appellate court rejected the notion that the granting of a bank charter by the director of finance was a "void order" and therefore subject to collateral attack at any time under § 536.100. 584 S.W.2d at 419. The court reasoned as follows:

> A void judgment is one which is rendered by a tribunal acting without competency to render it, due to a lack of jurisdiction over the parties, the subject matter or the remedy ordered by that tribunal.... The issue of the qualifications of the incorporators was clearly within the jurisdiction of the director and, even if it was erroneously

decided (a question we do not reach), the decision was not void.

*Id.* (citations omitted.)

■ Here, as in *Manchester Bank,* Plaintiffs claim the trial court had subject matter jurisdiction based on § 536.100 since the administrative agency's order was void due to an unqualified applicant. Plaintiffs' claim is untenable because the issue of the applicant's qualifications was squarely within the jurisdiction of the Taney County Planning and Zoning Commission and, even if the commission made a wrong decision (a question we do not decide), the decision was not void. Thus, the trial court erroneously based its jurisdiction on § 536.100.

MPL's Points IV and V attack the trial court's determination that the rezoning permit was void because it had expired for failure to renew within one year of its issuance. Chapter III, Section 1.9, of the Taney County Code states:

All permits issued shall have an active time-frame of one year. Permitees can request extensions at the end of the one-year period. Prior to extensions being approved permits shall be reviewed for changes in the code and incorporated into the new extension. If a permit has expired, application for a new permit can be made.

Prior to September 22, 1993, MPL applied for a grading permit in order to commence construction on its condominium project. The Taney County Zoning and Planning Commission issued the permit on September 22, 1993. Plaintiffs Maze timely filed an appeal to the Taney County Board of Adjustment. After a hearing on October 27, 1993, the appeal was denied. One of the grounds asserted on appeal for revoking the grading permit was that the rezoning permit had expired for failure to renew. After the board's adverse decision, Plaintiffs took no further steps for review under § 64.870.

What we said in disposing of Point I applies with equal force to the present issue. Application of *American Hog* and *Carter* to the expiration issue requires us to determine that the trial court lacked subject matter

jurisdiction to declare the rezoning permit invalid for failure to renew.

Clearly, Plaintiffs failed to follow the review procedures under § 64.870. After the Board of Adjustment ruled adverse to Plaintiffs, they could have petitioned the circuit court for a writ of certiorari pursuant to § 64.870.2. Instead, they filed suit the following year for a declaratory judgment under § 536.100, claiming that the rezoning permit was void. As shown earlier, *American Hog* and *Carter* prohibit Plaintiffs from attacking the rezoning in this manner and, according to *Manchester Bank,* the Board of Adjustment decision was not a void order.

Therefore, the trial court improperly denied MPL's motion to dismiss Count I of Plaintiffs' petition. The judgment regarding that count must be reversed and the cause remanded with directions to dismiss Count I.

MPL's next two points relate to the road controversy. Specifically Point VI alleges that the trial court erred in entering judgment on Count II of Plaintiffs' petition and declaring the subject road to be private because the judgment was based on an erroneous finding that the public had not used the road. MPL claims the judgment lacks evidentiary support and is against the overwhelming weight of the evidence which establishes that the road is a public road by common law dedication. We agree.

A synopsis of the relevant evidence is necessary before addressing the road dispute. A substantial amount of the evidence was documentary in nature consisting of plats, diagrams, aerial photographs, maps, and assessor's office records. The principal witnesses who testified were Clyde Brinley, the developer of Friendly Hills Subdivision, and Edward Taylor, one of the adjoining landowners to said subdivision.

The road in question is now known as Lenhart Lane. This road originates at Highway 265 and extends in a westerly direction, first crossing a tract owned by Larry Greer (now deceased) and his wife Eden. From the Greer tract, the road continues westerly through the Friendly Hills Subdivision and terminates at property owned by Edward and Ann Taylor, husband and wife. MPL's

property lies directly south of the Taylor tract. The MPL and Taylor tracts abut Table Rock Lake which forms the western boundary of these tracts.

In 1968, Taylors purchased approximately 21 acres from Mr. Jezzard and Mr. Newton who had owned the property since 1929. On August 18, 1989, Taylors conveyed the south 11 acres of their tract to MPL's predecessor in title along with a roadway easement over their remaining property to Lenhart Lane.

When Taylors purchased their property in 1968, Mr. Wilcox owned the tract now platted as Friendly Hills Subdivision, and the Greer tract was then owned by the McCunes. Between 1968 and 1970, Taylors acquired power line easements along Lenhart Lane from Wilcox and McCune to bring electricity to their property. Mr. Taylor also obtained permission from Wilcox to widen the road in order to bring two 12' × 65' mobile homes to his property. Taylors occupied one mobile home and their friends, Mr. and Mrs. Bloomquist, occupied the other one.

In 1968 and at the present time, Lenhart Lane provides the only access to the property owned by MPL and Taylors.

Prior to 1977 the Greers acquired the McCune tract, blocked off Lenhart Lane to Taylors and Bloomquist and filed suit against them to enjoin their use of the road. After a trial of that case, a judgment was entered on September 27, 1977, which decreed that Taylors and Bloomquists have a right to use the road over Greers' property and cannot be enjoined from such use.

Clyde Brinley purchased the Wilcox property in 1980 and platted the tract as Friendly Hills Subdivision. The plat showed Lenhart Lane as a road with a 40–foot right-of-way. Brinley also recorded a Declaration of Dedication and Restrictions relating to the subdivision. The restrictions made provisions for the maintenance of the subdivision roads by the lot owners therein. However, neither the plat nor the restrictions refer to Lenhart Lane as a private road.

Even though platted with a 40–foot right-of-way, Lenhart Lane apparently remains mostly a gravel road no wider than 16 feet throughout the subdivision. The lot owners have paved a portion of the road after 1986. At trial, the parties stipulated that real estate taxes have not been assessed nor paid on the road in question.

Edward Taylor testified that he had used Lenhart Lane continuously since he bought his lakefront property in 1968. He stated that he and the Bloomquists placed two mobile homes on his property in 1970 and that Bloomquists resided there until 1983. In 1988 Taylor built his home on the property.

Taylor explained that Newton and Jezzard, his predecessors in title, had planned a subdivision on the property he purchased. He noted that the subdivision roads still existed although they had now "grown up."

In order to transport the mobile homes to his property, Taylor said he asked Mr. Wilcox's permission to widen the road. Taylor stated that Wilcox had never objected to him using the road to his property and gave him permission to remove brush and all trees up to one foot in diameter in widening the road. Taylor emphasized that the reason he asked about widening the road was to avoid problems in transporting the mobile homes to his property.

As to the public use of Lenhart Lane, Taylor testified that (1) employees of Southwest Power Company used the road to service power lines adjacent to Taylor's property and Friendly Hills Subdivision, (2) employees of the Corps of Engineers and the Department of Conservation have used the road, and (3) various people have used the road to go "down to the lake to fish." Finally, Taylor said he understood that the road in question had existed since the 1880s and was used to cross White River before Table Rock Lake was completed.[8]

Clyde Brinley's testimony does not contradict Taylor's testimony mentioned above. Brinley admitted that he had no knowledge of the use of Lenhart Lane prior to his purchase of the Friendly Hills tract in 1980. Brinley testified that he never saw anyone use the road, other than Bloomquists, while he was developing and selling the lots in his

8. Other evidence in the record indicates that     Table Rock Lake was completed in the 1950s.

subdivision. Brinley's connection with the subdivision ended in 1985 when all the lots had been sold.

Brinley testified that between 1980 and 1985 neither Taylors nor Bloomquists ever asked his permission to use Lenhart Lane. Brinley agreed that Taylors' property has no access other than by Lenhart Lane.

Although Brinley said he intended that Lenhart Lane be a private road when he platted the subdivision, he conceded that he had no intent to affect any vested rights of others in the road. He said, "I didn't intend to take anything away, nor give them anything."

Plaintiffs Charles Earls and Jim Maze also testified at trial. Maze first purchased his property in Friendly Hills Subdivision in 1986, and Earls first purchased his property there in 1993. Nothing in their testimony contradicts Taylor's testimony regarding the use of Lenhart Lane prior to 1986.

The trial court found that the road through Friendly Hills has not been used by the public, and "any use by the public has been very limited in time, scope and duration." The trial court also found no evidence of any owner's intent to dedicate the road to the public. Finally, the court found that the road through the subdivision is approximately 12 to 16 feet wide on both the paved and unpaved portions thereof. As noted, MPL asserts that the trial court erred in finding the evidence insufficient on the issue of public use and intent to dedicate the road to the public.

■ Our review of this issue is governed by Rule 73.01(c), as construed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32.

■ We are mindful that the trial court can believe all, part, or none of the testimony

of any witness. *Herbert v. Harl,* 757 S.W.2d 585, 587 (Mo. banc 1988).[9] However, we find no indication that the trial court disbelieved Mr. Taylor's testimony on the issue of public use and the intent to dedicate Lenhart Lane for public use. Obviously, the court believed that the public had made limited use of Lenhart Lane, as indicated in its findings. Furthermore, none of the documentary evidence in this case supports a finding that Lenhart Lane is a private road. Instead, it appears to us that the trial court concluded that MPL's evidence was insufficient as a matter of law to demonstrate public use or any intent to dedicate Lenhart Lane for public use. Questions of law are reserved "for the independent judgment of the reviewing court." *City of Cabool v. Missouri State Board of Mediation,* 689 S.W.2d 51, 54 (Mo. banc 1985.)

■ We are convinced that Lenhart Lane was a public road by common law dedication at least by the time Clyde Brinley bought the Friendly Hills tract in 1980.

A claim of common law dedication may prevail absent a formal dedication if there is evidence that the owner clearly showed his intent to dedicate the land for public use and that the land was accepted by the public and was so used by the public. The dedication is not required to be accepted by governmental authority, so long as it is in fact accepted by the public as demonstrated by the use made of it, which period of use need not exceed the statute of limitations under § 516.010. Where a landowner, by words or conduct, declares his intent to dedicate a road to the use of the public and the public accepts the same by traveling along the road, the public rights are not restricted to the particular part traveled.

*Patterson v. Null,* 751 S.W.2d 381, 386 (Mo. App.1988) (citations omitted).

As the undisputed facts reveal, Taylors, Bloomquists, fishermen, and various public agency employees used Lenhart Lane without restriction from Mr. Wilcox, Brinley's immediate predecessor in title. This public

9. While this Court gives deference to the trial court's credibility determinations on witnesses, the documentary evidence in this case is not subject to the deference rule. *Hinkle v. Emmons,* 826 S.W.2d 359, 361 (Mo.App.1992).

use of the road occurred over a 12-year period beginning with Taylor's purchase of his property in 1968. At least by his conduct, Mr. Wilcox indicated an intent to dedicate Lenhart Lane to public use. Without ever barricading the road, he allowed the public to use the road as the sole access to Taylor's tract abutting Table Rock Lake. The road was accepted and used for that purpose by the public for at least 12 years. *Patterson* teaches that the period of public use need not exceed the 10-year statute of limitations under § 516.010.

In *Busch v. Hurricane Deck Holding Co.,* 882 S.W.2d 723 (Mo.App.1994), this Court squarely faced the issue of whether a road became a public road by common law dedication. The facts here and in *Busch* are quite similar.

In *Busch,* Harmony Cove Road was used by the public for well over 10 years for access to a resort on Lake of the Ozarks. The road crossed a 127-acre tract which was conveyed to the defendant in 1989. Defendant's predecessors in title had never barricaded the road, allowed the property owners to use the road to reach their property, and allowed mail carriers and school bus drivers to use the road along with building material suppliers who used the road for deliveries. Relying on *Patterson,* this Court held that the trial court erred as a matter of law in finding the evidence insufficient to establish an intent to create a right in the public to use Harmony Cove Road. *Id.* at 727. The instant case is governed by *Busch.*

MPL's Point VI is therefore well taken and requires reversal of the judgment on Count II of Plaintiffs' petition declaring Lenhart Lane to be a private road. Consequently, as to Count III of Plaintiffs' petition, the trial court erroneously enjoined MPL, its agents, servants, and employees from "traveling over and across" Lenhart Lane. Reversal of that portion of the judgment is required. Having decided that, we need not consider Point VII. Here, as was necessary in *Busch,* we must decide what relief the trial court should grant MPL on remand.

■ All of the evidence here indicates that the traveled portion of Lenhart Lane through Friendly Hills Subdivision varies from 12 feet to 16 feet in width. Additionally, the plat of Friendly Hills Subdivision shows Lenhart Lane with a 40-foot right-of-way. Because the trial court found Lenhart Lane to be a private road, the trial court never reached the issue of its width. *Patterson* instructs that once common law dedication to the public takes place, "the public rights are not restricted to the particular part traveled." 751 S.W.2d at 386. "It is the intent to dedicate the entire roadway and its use in whole or in part that creates the status of a public road under a common law dedication." *Hinkle,* 826 S.W.2d at 361.

With the record in this posture, we conclude, as we did in *Busch,* that the appropriate disposition of MPL's appeal is to reverse that portion of the judgment declaring Lenhart Lane to be a private road and remand the case to the trial court with instructions to (1) determine the correct width of Lenhart Lane through Friendly Hills Subdivision, and (2) enter judgment that Lenhart Lane is a public road through said subdivision.

We deny MPL's next two points which complain of the trial court's denial of its counterclaim based on claims for malicious prosecution and abuse of process. MPL claims that the trial court's judgment is not supported by substantial evidence and is against the weight of the evidence.

The trial court concluded that MPL failed to prove under Counts I and II of its counterclaim that Plaintiffs maliciously prosecuted any proceeding against MPL or instituted any such proceeding without probable cause. Our review of the record convinces us that the trial court's judgment on the counterclaim is supported by substantial evidence and is not against the weight of the evidence. That portion of the judgment is affirmed pursuant to Rule 84.16(b)(1) and (5).

In summary, the judgment entered on Count I of Plaintiffs' petition is reversed, and the case is remanded to the trial court with instructions to set that portion of the judgment aside and to dismiss Count I of Plaintiffs' petition. The judgment entered regarding Counts II and III of Plaintiffs' petition is also reversed. Upon remand, the trial court is instructed to proceed on Count

II of Plaintiffs' petition according to this opinion. That portion of the judgment denying MPL's counterclaim is affirmed.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.