KATHERINE I. MARTIN CONNELL, GRACE D. SMITH, LAURA C. SMITH, and CLIFFORD B. SMITH v. JERSEY REALTY & INVESTMENT COMPANY, Appellant.—No. 38781.—180 S. W. (2d) 49.

Division One, May 2, 1944.

Rehearing Denied, July 3, 1944.

*Gossett, Ellis, Dietrich & Tyler* and *Adams, Adams & Adams* for appellant.

*Charles W. Hess, Jr.,* and *Frank H. Terrell* for respondents.

BRADLEY, C.—Plaintiffs, respondents here, sought a declaratory judgment (Secs. 1126 et seq., R. S. 1939, Mo. R. S. A., Secs. 1126 et seq.) that certain land areas claimed by defendant were subject to a public easement by common law dedication. The trial court so declared, enjoined defendant from interfering with the public use of the areas in question, and defendant appealed.

The land lies at the southwest corner of Troost Avenue and 75th Street, Kansas City, and such, with other land, was acquired May 1, 1925, by David M. Proctor. The area acquired by Proctor was some 660 feet square. September 30, 1925, the Westbrook Investment Company was incorporated, capital stock $250,000, owned almost entirely by Proctor. On same day Proctor and wife conveyed the area in question and other land to the Westbrook Investment Company. This company constructed on the property a brick business building, called the Westbrook Building, and made other improvements including the construction of two macadam paved roadways, each 35 feet in width, and a 12½ foot concrete sidewalk on the north and east sides of the roadways. The 12½ foot sidewalk areas on the south and west side of the roadways were not paved. These ▮▮ roadways and the sidewalk areas on each side thereof constitute the area which plaintiffs claim was dedicated to the public.

Westbrook Place, laid out by the Westbrook Investment Company, is adjacent to and lies to the west and south of the area involved. We here reproduce, with some modification, a plat from appellant's brief, which shows the involved and adjacent areas. The lotted area lying west of the Smith and Connell tracts is a part of Westbrook Place, the remainder of which is adjacent to and south of 75th Terrace, and extends east to Troost Avenue.

Plaintiff Connell owns the land designated on the plat as the Connell tract, and plaintiffs Smith jointly own the tract designated on the plat as the Smith tract. The areas designated claimed easement on the south and west of the Westbrook Building, together with 12½ feet on each side thereof constitute the disputed area. Defendant owns the Westbrook Building, which occupies an area approximately 125 feet square, and defendant owns the disputed area, if that area is not dedicated to the public as claimed by plaintiffs.

We might say here that Kansas City was made a party defendant, and in its answer, alleged that the area in dispute was never dedicated as a public street; that the City never sought the area for street purposes; had never exercised any dominion or control over it; that the area is not necessary to the City for public streets and is "not located in places conforming to the logical development of a system of streets." The City asked that if the court found that the disputed area had been dedicated as claimed by plaintiff, then to decree that "such strips of land do not constitute public streets of the City", so as to burden the City with responsibility of upkeep. The trial court found, as stated, that the area was subject to the alleged common law dedication, as claimed by plaintiffs, and also found that the area did "not constitute such public streets of the municipality of Kansas City as to which defendant Kansas City is burdened with any responsibility of liability." That was apparently satisfactory, and the City did not appeal.

Westbrook Building was erected and the other improvements made in the fall of 1925; perhaps completed in 1926. The building, since erection, has been occupied by stores, shops, and offices. Senator Proctor testified that "when we began building the Westbrook Building . . . we arranged for a loan", and that the deed of trust to secure the loan "covered only a tract about 125 feet square upon which the building was located", but that in 1928, the first loan was paid off and a new loan obtained, and that the deed of trust securing the new loan "not only included the land (occupied by the building) and the building, but also the 60 foot roadway (claimed easement area) to the south and the 60 foot roadway to the west." January 5, 1927, the Smith tract, the Connell tract, and some lots in Westbrook Place were, by agreement of the owners, zoned for business purposes.

The Westbrook Investment Company had financial troubles; was adjudged a bankrupt December 10, 1930, and its deed of trust of May 1, 1928, on the Westbrook Building, the land occupied by it, the disputed area and other lots, was foreclosed August 17; 1931. The Seventy-Fifth Street Realty & Investment Company was the highest bidder and received the trustee's deed. September 1, 1931, the Seventy-Fifth Street Realty & Investment Company gave a deed of trust on the same property it purchased at the foreclosure, and this deed of trust was foreclosed January 5, 1939. At this second foreclosure,

defendant here was the purchaser and received the trustee's deed to the Westbrook Building and the disputed area.

In 1941 defendant placed signs about the disputed area to the effect that such was private property. This cause was filed August 18, 1942. Plaintiffs alleged that:

"The defendant Jersey Realty & Investment Company has threatened and is threatening to insist upon the right to close or barricade said paved streets in question, and is threatening to build upon said property which said paved streets and sidewalk areas cover, and the fulfilling of such threats would damage, and the possible fulfilling is damaging and reducing the value of plaintiffs' respective properties and would deprive the public of free access in and to the use of said paved streets and sidewalk areas to which they are entitled by the long and continuous user and hereinafter more particularly described, and would deprive plaintiffs herein of the free and valuable use of their properties and in some instances free access and the right of ingress and egress to portions of their property which would render those portions of considerably less value, if not valueless."

The record shows that since the erection of the Westbrook Building and the construction of the concrete sidewalks and the macadam roadways in the disputed areas, there have been several conveyances, deeds of trust, covering the disputed area and that none of these made any mention of easements. Also, it appears that the owners of the Westbrook Building and the disputed areas, have regularly paid taxes on this area. Also, it appears that at no time has any public money been spent upon the upkeep of the sidewalks and roadways in the disputed areas.

Plaintiffs did not testify, but there was evidence by witnesses who had lived in the neighborhood for several years as to the common use made of the claimed easement roadways and the adjacent concrete sidewalks, but plaintiffs concede that the user was not adverse, hence it will not be necessary to deal with the evidence of user. In making such concession plaintiffs say that adverse user is not required to establish a common law dedication, and such is not disputed.

"A 'common-law dedication' is the setting apart of lands for public use, to constitute which there must be an intention by the owner, clearly indicated by his words or acts, to dedicate the land to public use and an acceptance by the public of the dedication." Words & Phrases, Per. Ed., Vol. 8, p. 97; City of Palmetto v. Katsch, 98 So. 352, 353, 86 Fla. 506.

"The common-law doctrine of dedication rests on public convenience and has been sanctioned by the experience of ages; it is based on public policy and good faith, in that, while securing to the public only such rights as it has honestly enjoyed or learned to depend on, it takes from the landowner nothing that he did not intend to give." 26 C. J. S., p. 50, Sec. 2.

"It is said the intention of the owner to set apart his lands for the use of the public is the foundation and life of every dedication, and only when this intention is unequivocally manifested can a dedication be found to exist. The acts or declarations of the owner relied on to establish it must be convincing and unequivocal, indicating expressly or by plain implication, a purpose to create a right in the public to use the land adversely to himself. Morrison v. Marquardt, 24 Iowa, 35, 92 Am. Dec. 444. Such purpose, however, is to be gathered from the open and visible conduct of the owner, and it sometimes happens that his acts and declarations clearly evince an intention to dedicate lands to a public use when in fact he has no real intention of doing so. In such case, if individuals and the public act upon the owner's intention as so manifested, he is precluded from resuming his right of private property over the land, if his so doing would operate as a fraud upon them." Richards v. Public Service Commission, ■ 293 Mo. 625, 239 S. W. 838, l. c. 840. See also, Sheridan v. City of St. Joseph, 232 Mo. App. 615, 110 S. W. (2d) 371, l. c. 378.

We deduce from the law that in order to establish a common law dedication it must be shown: (1) That the owner, by his unequivocal action, intended to dedicate to public use; (2) that the land so dedicated must be accepted by the public; and (3) that land so dedicated must be used by the public. A common law dedication, sometimes termed implied dedication, operates not as a grant, but on the principle of estoppel. Johnson v. Ferguson, 329 Mo. 363, 44 S. W. (2d) 650, l. c. 653, and cases there cited.

■■ The question of dedication in the present case depends on the *intention* of the owner, the Westbrook Investment Company: There is no direct evidence of *intention*. If there was such intention, it must be inferred from what was done by the owner and from the evidence of Senator Proctor, infra. The Westbrook Investment Company constructed the claimed easement roadways and sidewalks, and the public used them for about 17 years. But user in the present case, for 10 years or more, is not sufficient, because admittedly not adverse. To constitute a common law dedication, the owner must have done something by act or by word which would unequivocally point to but one conclusion, namely, that the owner *intended to dedicate* to public use. Unequivocal means not doubtful, not ambiguous, clear, plain. Webster's New International Dictionary.

The whole of the improvements, the laying out of the Westbrook Place, the construction of the Westbrook Building, and the construction of the claimed easement roadways and sidewalks were under the direction of Senator Proctor. He was, for the purpose here, the Westbrook Investment Company, the owner. Plaintiffs introduced the deposition of Senator Proctor, who testified:

"I have practiced law in Kansas City since 1905; and am familiar with the development at 75th and Troost. Westbrook Place was a residence development and that portion (plaintiffs' tracts, the disputed area, and the land occupied by Westbrook Building) was intended originally as the business portion of the development. Also, lots 1 to 6 (south of 75th Terrace), Westbrook Place, were zoned for business. All was platted, and all developed approximately in fall of 1925. There were no streets there (at the time of platting, etc.) except Troost Avenue and 75th Street. In our plat, we dedicated Harrison Street from 75th down to 76th, and we dedicated 75th Street Terrace from what would be Campbell Street to Troost. In our plan we provided for a roadway 60 feet in width (the disputed area) west of the business building (The Westbrook Building) which was or had been started. Also, in our plan, we provided for a roadway 60 feet in width (disputed area) south of the business building and running west from Troost Avenue and connected with the roadway running north and south. We never dedicated those to the City and didn't attempt to. Q. By dedicating, you mean there was no formal dedication? A. Yes, that is right, no formal dedication. Simultaneously, with the building of that building we proceeded to pave the roadways. Those two roadways were projected for the benefit of all that property which the Westbrook Investment Company owned and zoned for business. The Westbrook Investment Company, after building the Westbrook Building and constructing those roadways south and west of the building, continued to operate the building until about December, 1930, when the company was thrown into involuntary bankruptcy, and, so far as I know, during the time of operation, there were no barriers or signs of any nature in these roadways that would indicate that they were not public streets. *We put in these roadways primarily for the benefit of those particular tracts (plaintiffs' tracts and the disputed area) including the tract upon which the building is located, and also, for the use of that part of the public that might desire to use those properties or to patronize the patrons*" (italics ours).

Cross examination: "Q. Now, it would be an advantage to the tenants of the Westbrook Building, would it not, if the paved pieces of property marked 'Street 1' and 'Street 2' (the west and south claimed roadway easements) were reserved for a parking space for the customers and the people in that building and the use only of customers of tenants of the buildings? A. Well, in answer to that, I would say that during the period that the Westbrook Investment Company controlled that property it would have been no advantage to the tenants for their customers to have the exclusive use for the reason that there weren't very many customers in the first place. And in the second place, those roadways were built on rather liberal lines and there was plenty of room there for any and all parking

and for any and all traffic. There was ample room there to take care of stationary cars as well as those in motion.''

"Relief by declaratory judgment is sui generis, and while not either strictly legal or equitable, yet its historical affinity is equitable.'' Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 130 S. W. (2d) 945, l. c. 954, 125 A. L. R. 1149; Maxwell v. Andrew County, 347 Mo. 156, 146 S. W. (2d) 621, l. c. 626; Borchard on Declaratory Judgments, pp. 137, 138, 172, 178. In the présent case the cause is equitable in nature and governed by equity principles and rules. One of such rules is that an equity case on appeal is considered de novo ''with authority to pass upon the weight of the evidence although we usually defer to findings of the chancellor'', but when the appellate court finds ''the weight of the evidence to be overwhelmingly against the decree'', such decree will be reversed. Peikert v. Repple et al., 342 Mo..274, 114 S. W. (2d) 999, l. c. 1002, and cases there cited.

It cannot, we think, be said in fairness, from Senator Proctor's evidence, or from anything in the record, that the disputed area was unequivocally dedicated to public use, or that it was ever intended to so dedicate it. In view of the law as to the requirements to make out a case of common law dedication, we are constrained to rule that this record is not sufficient to justify the decree below. Hence, the judgment should be reversed and the cause remanded with directions to enter a decree that the area alleged to have been dedicated to public use by common law dedication was not so dedicated [Smith v. Pettis County, 345 Mo. 839, 136 S. W. (2d) 282; 26 Wash. U. Law. Qr., 468, l. c. 488.] It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.