**SHAPIRO BROTHERS, INC., Appellant,**

v.

**JONES–FESTUS PROPERTIES, L.L.C., Respondent.**

**No. ED 87743.**

Missouri Court of Appeals, Eastern District, Division Two.

Oct. 10, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 9, 2006.

Mary M. Bonacorsi, St. Louis, MO, for appellant.

Bianca L. Eden, Hillsboro, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

Shapiro Brothers, Inc. (Shapiro Brothers) appeals from the judgment granting the counterclaim of Jones–Festus Properties, L.L.C. (Jones–Festus) for trespass damages in the amount of $1,148 and for a permanent injunction against Shapiro Brothers from traversing Jones–Festus' property. On appeal, Shapiro Brothers argues the trial court erred in (1) finding there was no public prescriptive easement, (2) finding there was no public easement by virtue of common law or implied dedication, (3) enjoining Shapiro Brothers' use of the alleged easement as a trespass because as a member of the public Shapiro Brothers had a right to use the area, (4) finding that Shapiro Brothers failed to establish a

private prescriptive easement in favor of itself, (5) finding that Shapiro Brothers had trespassed and in enjoining use of the alleged easement because Shapiro Brothers established a right to use the area on the basis of either a public or private prescriptive easement, and (6) awarding damages to Jones–Festus. We affirm.

Jones–Festus is a Missouri company that owns certain real property in Jefferson County located at 1269 Truman Boulevard in Festus, Missouri and which includes Lots 1, 3A, 3B, and 17 of Jefferson Center One Subdivision and Lots 14 and 15 of Golden Rule Subdivision. The property includes a parking lot and several commercial shopping establishments including Shop 'N Save, Big Lots, Dollar General, and National Rent to Own. The parking lot has one access to Vine Street in Festus, on the southeast portion of the parking lot, two accesses to Truman Boulevard in Crystal City, Missouri, on the east portion of the parking lot, and one access to Cave Road in Festus, on the north part of the parking lot.[1]

Shapiro Brothers is a Missouri corporation which operates a scrap metal business off Truman Boulevard near the boundary between Festus and Crystal City. Shapiro Brothers used the Jefferson Plaza parking lot, via Vine Street, to access its property. Shapiro Brothers also had an alternative way to access its property by Ninth Street.

In May 2004, Jones–Festus threatened to block Shapiro Brothers access to Vine Street from the Jefferson Plaza parking lot. In response, Shapiro Brothers filed their amended petition for preliminary and permanent injunction to prevent Jones–Festus from blocking access to Vine Street. In their petition, Shapiro Brothers sought to enjoin Jones–Festus from blocking the entrance into the Jefferson Plaza parking lot at Vine Street on the basis that Shapiro Brothers allegedly had a right to use the entrance and part of the parking lot for access to and from the Shapiro Property due to a public prescriptive easement, a private prescriptive easement or a public road by common law or implied dedication.

Jones–Festus filed a counterclaim against Shapiro Brothers alleging trespass and requesting actual and punitive damages, as well as a permanent injunction to restrain and enjoin Shapiro Brothers from trespassing on the property, or, in the alternative, equitable apportionment of past and future maintenance of the property. The trial court entered judgment in favor of Jones–Festus' counterclaim for trespass and permanent injunction, awarded Jones–Festus damages in the amount of $1,148, and denied Shapiro Brothers' petition for permanent injunction. This appeal follows.[2]

Our review of this appeal is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), which requires us to affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Maasen v. Shaw*, 133 S.W.3d 514, 518 (Mo.App. E.D.2004). We accept all evidence and inferences therefrom in the light most favorable to the prevailing party and disregard all contrary evidence. *Murphy*, 536 S.W.2d at 32.

---

1. Festus and Crystal City are immediately adjacent to each other and share a common boundary.

2. Jones–Festus filed a motion to dismiss for Shapiro Brothers' failure to comply with Rule 84.04(c). We recognize the deficiencies complained of in Shapiro Brothers' "Statement of Facts" but choose to review the case nonetheless. Jones–Festus' motion is therefore denied.

■ In its first point, Shapiro Brothers argues the trial court erred in finding there was no public prescriptive easement. Specifically, Shapiro Brothers contends the trial court erroneously relied on Section 228.190, RSMo 2000,[3] in finding that the easement area had to be maintained by the public in order for there to be a public prescriptive easement. We disagree.

■ "An easement by prescription is established by use that is continuous, uninterrupted, visible, and adverse for a period of ten years." *Reardon v. Newell*, 77 S.W.3d 758, 761 (Mo.App. S.D.2002). "The law does not favor prescriptive easements" and a party claiming the existence of one must show the elements by clear and convincing evidence. *Id.* Mere permissive use of land cannot ripen into an easement. *Id.* However, "the public may acquire the right to the use of a road or easement over the land of another, when such road has been established . . . by adverse occupancy and use of the same by the public for a period of time equal to that prescribed by the statute of limitations . . ." *Terry v. City of Independence*, 388 S.W.2d 769, 774 (Mo. banc 1965).

Relying on Section 228.190, the trial court found Shapiro Brothers failed to establish a public road or easement by prescription because there was no proof that the public had expended funds on the area. Shapiro Brothers argues the trial court erred in so finding because expenditure of public funds is only a requirement in establishing a public road under Section 228.190. Shapiro Brothers contends that Section 228.190 is inapplicable to the establishment of easements by prescription for public streets and that expenditure of public funds is not necessary in order to create a public prescriptive easement. Section 228.190 provides:

All roads in this state that have been established by any order of the county commission, and have been used as public highways for a period of ten years or more, shall be deemed legally established public roads; and all roads that have been used as such by the public for ten years continuously, and upon which there shall have been expended public money or labor for such period, shall be deemed legally established roads; and nonuse by the public for five years continuously of any public road shall be deemed an abandonment and vacation of the same.

In arguing that Section 228.190 does not apply in the instant case, Shapiro Brothers relies on *Rosemann v. Adams*, 398 S.W.2d 855, 857 (Mo. banc 1966). Contrary to Shapiro Brothers assertions, the *Rosemann* court did not specifically find that Section 228.190 applied only to the establishment of public roads and could not apply to the establishment of public prescriptive easements. *Id.* Rather, it stated that cases had been decided using the criteria under Section 516.010, but declined to conclude that Section 228.190 was expressly inapplicable to the establishment of prescriptive easements. *Id.*

Similarly, in *Mackey v. Weakley*, 439 S.W.2d 219, 224 (Mo.App. E.D.1969), a case factually similar to the instant case, the court of appeals declined to rule on whether Section 228.190 was never applicable to the establishment of public easements by prescription stating instead that "the statute is generally applicable."

In *Mackey*, the plaintiff asked the trial court to declare a certain triangular piece of property a public road and to issue an injunction to prohibit the defendant from interfering with the reasonable use of the road. *Id.* at 220. The plaintiff alleged

---

3. Unless otherwise indicated, all further statutory references are to RSMo 2000.

that the triangular tract had been maintained by the City of Clarksville as a public street for more than one hundred years and was used by the plaintiff and the public in general as a means of ingress and egress to various tracts of land along the road. *Id.* The plaintiff testified he used the triangular tract as a cut through an average of eight to ten times per week and observed other people using the tract in a similar manner. *Id.* at 221–222. In addition, other witnesses testified that the triangular tract was used by them as a convenient "cut off" from Highway 79 over to the public road. *Id.* at 222.

The trial court found in favor of the plaintiff on the theory that the area had become a public road because public funds had been expended for ten years continuously before the filing of the petition by the plaintiff. *Id.* at 223. The court of appeals reversed holding that there was insufficient evidence to support a finding that public funds and labor were expended to maintain the tract as a public road. *Id.* at 225.

The *Mackey* court further held that to establish an easement by prescription (1) the use must be for the prescribed period, (2) the use must be adverse, (3) the use must be under a claim of right, and (4) the owner must have notice of the use, its character and the claim of right. *Id.* at 225. The court held that "mere use of the ... as a convenient 'cutoff' because it was available for use or seemed to be intended for public use, does not alone show that the use is adverse or is exercised as a matter of right." *Id.* at 226.

Even if Section 228.190 does not apply, however, the evidence demonstrates that the general public did not claim any right to the area, but rather used the parking lot as a "short cut" to access various public streets surrounding the parking lot as well as to patronize the shopping center. Gen-

rich Rudloff (Rudloff), a Crystal City resident, testified that he used the short cut across Jones–Festus's parking lot to travel from Truman Boulevard to Vine Street because "it saves time." He testified that he was never given permission to drive through the parking lot and that he never tried to hide his use. Rudloff testified that he never saw any arrows directing him to travel through the parking lot to get to Vine Street. He testified that he patronized the stores in Jefferson Plaza "once in a while."

Frank Elliott (Elliott), a truck driver for Shapiro Brothers for twenty years and a resident of Crystal City for thirty-five years, testified he drove loads of scrap metal in and out of the Shapiro Brothers property an average of once per day. Elliott testified that he would travel out of the Shapiro Brothers yard, make a right turn onto Vine Street to the parking lot and continue to Highway 61/67 by crossing the southern edge of the parking lot. Elliott testified that he could have gone out on Ninth Street to reach Truman Boulevard instead of traveling across the parking lot but stated that he did not use Ninth Street because of low visibility. Elliott testified he never received permission from the owners of the shopping center to cross the parking lot, but did state that Shapiro Brothers instructed him to use only the southern edge of the lot for ingress and egress. Elliott testified that when driving through the southern edge of the parking lot, he never saw markings or a sign indicating it was a street.

Elliott further testified that he had cut through the parking lot in his own personal vehicle "quite a lot," and stated he occasionally shopped at the Shop 'N Save in Jefferson Plaza. Elliott stated that the public used the parking lot as a shortcut from Truman Boulevard to Vine Street "very much every day." Elliott testified

he was not claiming any individual right to the disputed area.

Gregory Shapiro (Shapiro), Vice President of Shapiro Brothers, testified that Shapiro Brothers trucks traveled from Vine Street to Highway 61/67 through the area where the Jefferson Plaza shopping center was for about 35 years. Shapiro also testified that other tractor-trailers and general car traffic had cut through the area between Vine Street and Truman Boulevard for the past 35 years. Shapiro also testified he had personally used the route between Truman Boulevard and Vine Street "a lot" of times. Shapiro stated that neither he nor Shapiro Brothers employees have paid for any maintenance on the portion of the parking lot owned by Jones–Festus.

Finally, Ramona Jones (Jones), Managing Member of Jones–Festus, whose duties include keeping all the business records for Jones–Festus testified that Jones–Festus purchased the property in 1997. Jones testified that Jefferson Plaza has four points of access—two accesses from Highway 61/67, one access off of Cave Road, and one access at Vine Street. Jones also stated that Jones–Festus allows the public to come onto the property for the purpose of patronizing the businesses. Jones testified that between 1997 and 2004, Jones–Festus never fenced out or barricaded the alleged easement to prevent Shapiro Brothers or the general public from using it. Jones testified that Jones–Festus had never done anything to try to charge the general public for use of the "cut-through" area. Jones stated that Jones–Festus had not given permission to Shapiro Brothers to use the property. Jones also stated that she had seen Shapiro Brothers using the property for other purposes besides ingress and egress. Jones testified she saw Shapiro Brothers "remove the tarps off the trucks, ... back in down into that

old railroad easement area, ... and sweep out the backs of the beds of the trucks" onto the asphalt of Jones–Festus' parking lot numerous times. Jones further stated that during the time Jones–Festus has owned the shopping center, it has done all repairs on the parking lot without receiving any money from the public.

In addition, Shapiro Brothers failed to establish the width and length of the prescriptive area. See *Tadlock v. Otterbine,* 767 S.W.2d 366, 368 (Mo.App. S.D.1989)(holding that a prescriptive easement's "character and extent ... are determined by the character and extent of use during the prescriptive period").

Douglass Shatto (Shatto), Shapiro Brothers' expert traffic engineer, indicated that the area marked in red on Exhibit 2 was delineated to show where the area the traffic study was focused. Shatto testified "the area is poorly defined as far as what the travel path actually is, because people do have a tendency to drive within a pretty wide swath of this area." Shatto testified that the area marked in red "represents the general vicinity that people ... were driving." Shatto admitted "there was no travel way denoted aside from the end of the parking aisle, so there was no clear line of travel within [the alleged easement] area for any vehicles."

Thomas Highfill (Highfill), Shapiro Brothers' surveyor, testified that the easement area platted on Exhibit 3 ranged in width from 55.56 feet wide to 127 feet wide. Highfill further testified that the alleged easement needed to be wide enough for multiple vehicles to travel through it at one time and to allow for a turning radius. Highfill testified he did not know whether the entire alleged easement area was used by the vehicles that traveled across it and admitted that while he did view Shapiro Brothers' trucks

crossing the alleged easement area, he did not know the exact route the trucks took.

Shapiro Brothers failed to show by clear and convincing evidence its claim to a public prescriptive easement over Jones–Festus' parking lot. The evidence presented at trial by Shapiro Brothers was that use by the general public was for a cut through. We find no trial court error. Point one is denied.

■ In its second point, Shapiro Brothers argues the trial court erred in finding there was no public easement by virtue of common law or implied dedication. Shapiro Brothers contends that by allowing the general public to use the alleged easement area as a shortcut for more than thirty years, Jones–Festus showed the requisite intent to dedicate. We disagree.

■ To show common law dedication, a party must show that (1) the owner, by unequivocal action, intended to dedicate the land to public use, (2) that the land dedicated was accepted by the public, and (3) that the land dedicated is used by the public. *Ankrom v. Roberts*, 126 S.W.3d 798, 801 (Mo.App. S.D.2004); *Whittom v. Alexander–Richardson Partnership*, 851 S.W.2d 504, 507–508 (Mo. banc 1993); *Connell v. Jersey Realty & Investment Co.*, 352 Mo. 1122, 180 S.W.2d 49, 53 (1944). The owner's intention to establish land for public use is the foundation of common law dedication, and only when this intention is unequivocally manifested, either expressly or by plain implication, can a dedication be found. *Connell*, 180 S.W.2d at 52. Moreover, the acts or declarations of the owner must convincingly demonstrate "a purpose to create a right in the public to use the land adversely to himself." *Id.*

We note the question of whether an intent to dedicate a portion of a commercial parking lot can be inferred from the inaction of the parking lot owners has never been decided in Missouri. Moreover, none of the cases cited by Shapiro Brothers to argue that an owner's "inaction" can be used as proof of an intent to dedicate is factually similar to the instant case. *See Whittom v. Alexander–Richardson*, 851 S.W.2d 504 (Mo. banc 1993), *Busch v. Hurricane Deck Holding Co.*, 882 S.W.2d 723 (Mo.App. S.D.1994), *Earls v. Majestic Pointe, Ltd.*, 949 S.W.2d 239 (Mo.App. S.D. 1997), *Patterson v. Null*, 751 S.W.2d 381 (Mo.App. S.D.1988).

Even assuming that a portion of a commercial parking lot can be dedicated, which we need not decide in this opinion, Shapiro Brothers failed to show that the Jones–Festus or its predecessors intended to dedicate the land to public use. The evidence showed that the alleged public roadway was poorly defined as far as the travel path and vehicles tended to drive in a wide swath of the area. The evidence presented simply demonstrated that numerous witnesses cut across the parking lot from the Vine Street entrance for various reasons.

The instant case is similar to *Connell*. In *Connell*, the plaintiff claimed that certain property owned by the defendant was subject to a public road by common law dedication. *Id.* at 50. The prior owner of defendant's property had developed a commercial building and two paved roadways thirty-five feet in width and a twelve and one half foot sidewalk on the north and east sides of the roadway. *Id.* These roadways and sidewalk were the area claimed to be a public roadway. *Id.* The general public had used the area for approximately seventeen years. *Id.* at 53. After the defendant stated that it would close or barricade the streets, plaintiff filed her petition. *Id.* at 52. The developer of the property testified that the two roadways were intended "for the benefit of all that

property which the Westbrook Investment Company owned and zoned for business." *Id.* The developer also testified that the roadways were for "the use of that part of the public that might desire to use those properties or to patronize the patrons." *Id.* In holding that there was no common law dedication, the court stated the record was devoid of any evidence that the property owner unequivocally intended to dedicate the disputed area to public use. *Id.* at 54.[4]

In the instant case, the testimony of Shapiro established that the disputed area had been a parking lot for a commercial center for the entire period that Shapiro Brothers claimed use by the public. Jones–Festus invites the public onto its commercial parking lot for the purpose of accessing the businesses located on the property. No roadway in the area claimed was delineated on the plat prepared by the previous owners. Witnesses testified that no roadway was visibly delineated on the parking lot. The only evidence presented by Shapiro Brothers that the property owner intended to dedicate was that neither Jones–Festus nor its predecessors blocked off or barricaded the access to the parking lot at Vine Street or at Truman Boulevard. However, Jones testified that the access at Vine Street was for the benefit of the tenants of the commercial center and that the public was invited to use same to access the shops. To barricade or block entrances would be counterproductive and economically detrimental to Jones–Festus and Jones–Festus's tenants as fewer entrances would make it more difficult for the public to access the stores on the property.

As in *Connell*, there is no direct evidence here of intent to dedicate a public road. The evidence shows that the owners, both Jones–Festus and its predecessors, intended for the public to use the parking lot for the purpose of accessing the stores. Further, the testimony of numerous witnesses demonstrate that the access was used for the purpose the landowners intended, in that while they all used the entrances at Vine Street and Truman Boulevard as a short cut, they also patronized the stores located on the property. There was substantial evidence supporting the trial court's finding that there was no public easement by virtue of common law or implied dedication. Point two is denied.

 In its third point, Shapiro Brothers argues the trial court erred in enjoining Shapiro Brothers' use of the alleged easement as a trespass. Specifically, Shapiro Brothers contends that such injunction is inconsistent in that it recognizes the general public's use of the easement area while it simultaneously prohibits Shapiro Brothers, a member of the general public, from utilizing the easement area in the same manner. We disagree.

 Trespass is the unauthorized entry upon the land of another. *Ogg v. Mediacom, L.L.C.,* 142 S.W.3d 801, 807 (Mo.App. W.D.2004). "While a particular trespass may constitute what seems to be only a minor inconvenience, a property owner's right to exclude others from his or her land has been recognized as one of the most essential sticks in the bundle of

4. An important distinction between *Connell* and the instant case is that while the area claimed as an easement here is a portion of a commercial parking lot, in *Connell*, an actual roadway was laid out by the developer. Despite the existence of an established roadway, however, the *Connell* court found no intent to dedicate on the part of the property owner. Here, the fact that no roadway was delineated by Jones–Festus makes the trial court's finding of no dedication even stronger than in *Connell*.

rights that are commonly characterized as property." *Id.*

As the owner of private property housing a parking lot for a commercial shopping center, Jones–Festus has the right to determine who may access its property. The parties agree that Shapiro Brothers did not ask for nor did Jones–Festus give Shapiro Brothers permission to allow Shapiro Brothers' vehicles and customers to traverse Jones–Festus' commercial parking lot as a short cut to Shapiro Brothers property. Jones stated that the public was invited onto the parking lot for the purpose of accessing the stores on the property. As such, Shapiro Brothers' actions were unauthorized entries onto the property of Jones–Festus.

■ "Injunction is the proper remedy to prevent harassing, continuing and annoying trespasses, in which a multiplicity of suits, if the only remedy, would be inadequate." *Schroeder v. Ziegelman,* 443 S.W.2d 16 (Mo.App.1969). Here, Jones testified as to increasing amounts of Shapiro Brothers' vehicles traversing and parking on the lot. Without the judgment enjoining Shapiro Brothers' entrance into Jones–Festus's property, Jones–Festus would be forced to continue to bring action for trespass against Shapiro Brothers and the damage to Jones–Festus's property would continue.

In its brief, Shapiro Brothers erroneously alleges that the trial court determined in its judgment that the general public had a right to traverse the Jones–Festus's property. The trial court merely stated in its findings of fact that the general public uses "the parking lot as 'short-cuts' to the various public · streets surrounding the parking lot." The trial court made no declaration as to the right of the general public to use the alleged easement area.

In its judgment, the trial court determined that Shapiro Brothers was a tres-

passer and as such was not entitled to traverse the property of Jones–Festus and enjoined Shapiro Brothers from so doing. The trial court was not asked to nor did it make a determination as to the rights of the general public to use the property as a short cut. There is no inconsistency in the trial court's judgment. There was substantial evidence supporting the trial court's decision to enjoin Shapiro Brothers' use of the alleged easement as a trespass. Point three is denied.

■ In its fourth point, Shapiro Brothers argues the trial court erred in finding that Shapiro Brothers failed to establish a private prescriptive easement in favor of itself. Shapiro Brothers contends that as an adjoining property owner, it used the alleged easement area for access to its property and therefore established an individual claim of right to the area. We disagree.

■ In order to establish a *private* easement by prescription, in addition to proving that the use is continuous, uninterrupted, visible and adverse for a period of ten years, a plaintiff must show that his use is exclusive "in the sense that [his] claim of right would have to be particular to [himself] as opposed to arising simply as a member of the general public." *Lawless v. Sears, Roebuck and Co.,* 555 S.W.2d 79, 82 (Mo.App. W.D.1977). No claim of individual right of easement by prescription may arise under circumstances where one claims a private traffic way as well as a belief that the disputed area is a public way. *Custom Muffler and Shocks, Inc. v. Gordon Partnership,* 3 S.W.3d 811, 814–815 (Mo.App. W.D.1999)(*quoting Rosemann,* 398 S.W.2d at 858).

Here, the evidence demonstrates that Shapiro Brothers made no individual claim of right to the property. Shapiro testified the public had the right to use the area of

the parking lot claimed in that the disputed area was a thoroughfare for the public. Further, Shapiro stated that the use Shapiro Brothers made of the parking lot was the same as the general public—as a cut-through. Elliott also testified that he believed the area to be a public road.

The cases cited by Shapiro Brothers are distinguishable from the instant case. Unlike here, in *Cramer v. Jenkins*, 399 S.W.2d 15, 18–19 (Mo. banc 1966) and *Lacy v. Schmitz*, 639 S.W.2d 96, 100 (Mo. App. E.D.1982), the plaintiff made no claim that the road was being used in the same manner as the general public. Unlike here, in *Beldner v. General Electric Co.*, 451 S.W.2d 65, 74–75 (Mo. banc 1970) and *White v. Ruth R. Millington Living Trust*, 785 S.W.2d 782, 783–784 (Mo.App. S.D. 1990) the plaintiffs presented evidence of labor and maintenance performed in order to support their individual claim of right. Finally, unlike here where no easement has been established, in *Thomas v. King*, 160 S.W.3d 445, 451 (Mo.App. S.D.2005), the court held that the easement in question had been established prior to the date either party acquired their property and therefore any individual claim had no legal effect.

Shapiro Brothers failed to show an individual claim of right to the property separate from the general public. There was substantial evidence supporting the trial court's finding that Shapiro Brothers did not have a private prescriptive easement. Point four is denied.

In its fifth point, Shapiro Brothers argues the trial court erred in finding that Shapiro Brothers had trespassed and in enjoining use of the alleged easement. Specifically, Shapiro Brothers contends the overwhelming weight of the evidence established that Shapiro Brothers had a legal right to use the easement area either on the basis of its private prescriptive easement or the same basis as other members of the general public. We disagree.

Shapiro Brothers relies on *Haer v. Graves*, 649 S.W.2d 246 (Mo.App. W.D. 1983) to essentially reargue Point III. Citing *Haer* for the proposition that a claim of right acquired by an individual and other members of the public defeats any charge of trespass, Shapiro Brothers contends that it too defeated any trespass charge. *Haer*, 649 S.W.2d at 247. *Haer* is distinguishable from the instant case, however, in that the court in *Haer* found substantial evidence supporting a public prescriptive easement acquired by the defendant and the general public. *Id.* As such, the court denied the plaintiffs' request for injunctive relief against trespass and damages. *Id.* Here, the trial court did not find that the Shapiro Brothers met its burden of proof to establish a public prescriptive easement, a private prescriptive easement or a public road by common law dedication. Therefore, the trial court did not err in finding a trespass and in enjoining Shapiro Brothers' use of the alleged easement. The trial court's judgment was supported by substantial evidence. Point five is denied.

In its sixth and final point, Shapiro Brothers argues the trial court erred in awarding damages to Jones–Festus. We disagree.

We have already determined that the trial court's finding of trespass is supported by the evidence and Shapiro Brothers' entry onto Jones–Festus' property was unauthorized. When trespass is found, the claiming party is entitled to damages. *Ogg*, 142 S.W.3d at 807. We will affirm the trial court's award of damages unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Buttress v. Taylor*, 62 S.W.3d 672, 681 (Mo.App. W.D.2001).

Here, Shatto, Shapiro Brothers' expert traffic engineer, testified that Shapiro Brother's trespass constituted at least two percent of the traffic that entered onto the parking lot. In addition, Jones stated that the number of Shapiro Brothers' vehicles traversing the parking lot has increased substantially over the last few years. The evidence also established that Shapiro Brothers' vehicles were much heavier than normal vehicular traffic. Shapiro Brothers' vehicles weighed between 29,100 pounds and 82,960 pounds. Jones–Festus presented evidence that between 2000 and 2004, it expended $57,459 in maintenance and repair of the parking lot. Further, Jones testified to witnessing Shapiro Brothers' trucks damaging the curbs and sweeping out its trucks onto Jones–Festus' property. There was substantial evidence supporting the trial court's award of damages in the amount of $1,148. Point six is denied.

Judgment affirmed.

GEORGE W. DRAPER III, P.J. and GARY M. GAERTNER, SR., J., concur.