

## Missouri Court of Appeals
### Southern District

#### In Division

MARK BECKMANN, CHERYL BECKMANN,　)
WILLIAM ANGELL, SHERRY ANGELL,　)
MARK EDGECOMB, MIKE EDGECOMB,　)
GARY GARDNER, KATHY GARDNER,　)
TOM RUTLEDGE, TARA RUTLEDGE,　)
JERRY MAIER, BRENDA MAIER,　)
MARK HAUPT, PAMELA HAUPT,　)
JEFFREY ALAN PORTER, and JODY PORTER,　)
　)
　　Plaintiffs/Counterclaim-　)
　　Defendants/Appellants,　)
　)　No. SD38278
　)
　　v.　)
　)　**Filed:　December 31, 2024**
　)
JOY PHILLIPS and DANIEL JOSEPH GARDNER,　)
　)
　　Defendants/Counterclaimants/　)
　　Respondents.　)

APPEAL FROM THE CIRCUIT COURT OF BARRY COUNTY

Honorable Johnnie E. Cox, Judge

### AFFIRMED

Appellants, all property owners in a real estate development for which there is no recorded plat, sought to enjoin other property owners, Respondents, from doing with their property what other property owners had done with theirs.  Appellants challenge Respondents' standing to bring a counterclaim, the ruling in favor of Respondents on Appellants' petition, and

the ruling allowing the testimony of certain witnesses who were disclosed shortly before trial and called by Respondents. We affirm.

**Background**

Turkey Point is a nine-property, residential development on Table Rock Lake. It takes its name from an unrecorded survey commissioned by the developers in 1978. Turkey Point's developers sold tracts via deeds containing metes and bounds descriptions, not lot numbers. The developers' deeds to purchasers came with building requirements and restrictions, including, but not limited to, residential use. The restrictions do not preclude boat docks, parking vehicles on the property, or use of the property by non-owners. The restrictions "are to run with the land" and "attach to and run with each and every of the said lots," but the restrictions do not define "lots" or any land to which they attach (other than the individual parcel conveyed by each deed). "Turkey Point" appears nowhere in the deed or restrictions, and there is no recorded subdivision plat to which the term "lots" could refer. Turkey Point has an unincorporated homeowner's association that is not referenced in the deed restrictions.

Turkey Point properties are accessed via Cherry Lane, a gravel road that ends in a cul-de-sac. In 1978, the developers dedicated ownership of Cherry Lane to Barry County. The recorded quitclaim deed defines the lane as a "road for public use," followed by a metes and bounds description. The dedication of Cherry Lane was not formally accepted by the county, but it is used often by the general public.

One of the benefits of property ownership in Turkey Point is access to Table Rock Lake. The U.S. Army Corps of Engineers ("Corps") allows a household to own a maximum of two boat slips on Table Rock Lake. These slips can be in a private dock or community dock. A private dock

2

has one or two slips; community docks range from two to twenty slips. To obtain a community dock permit, the Corps requires, among other things, a recorded, dedicated easement for access and parking on private property close to the dock site. One 10' x 20' parking space is required for every three slips, with adequate room for ingress and egress access to these parking spaces.

Turkey Point has had two permitted, community docks attached to the shoreline. The Turkey Point boat dock is a 12-slip dock permitted by the Corps since 1995. Half of the slips in that dock are owned by Turkey Point property owners and the other half are owned by others. The other community dock is the Haupt dock, with three slips owned by the Haupt Appellants and their relatives. This formerly private dock was converted to a community dock in 2021, with the Haupts dedicating a parking easement on their property to obtain the community dock permit. To access these docks from the nearest paved road, resident and nonresident slip owners drive vehicles, golf carts, and utility task vehicles on Cherry Lane, then continue to the community boat docks across a four-feet-wide, dedicated ingress/egress easement running through part of Respondents' property.

After acquiring two Turkey Point properties in 2020, Respondents applied to the Corps and received a construction permit for a community boat dock on the shoreline adjacent to their land. They made arrangements to have a 20-slip dock constructed and delivered. Respondents recorded a perpetual parking and ingress/egress easement to all dock slip owners and future dock slip owners. The land subject to the parking easement is adjacent to the existing dock ingress/egress easement and the Haupts' parking easement.

Respondents' neighbors became aware of the plan to install another dock and contacted the Corps to get the construction permit rescinded, complaining about access and parking. The

Beckmann and Porter Appellants, in particular, were aware of the incoming dock and the parking and access easements, yet they bought Respondents' house in Turkey Point in June of 2021 "with every intention of fighting this after the fact." Three days after closing on their house, they sent an email to the Corps, asking them to rescind the dock permit and void the parking easements. Based on these complaints, the Corps suspended final permitting of Respondents' dock until the access and parking complaints were resolved.

Appellants sued for a declaration that Respondents lack authority to permit boat slip owners to use Cherry Lane because it is a private road, for a declaration invalidating the perpetual easement recorded by Respondents, for a declaration that the developers' deed restrictions apply, for a declaration that Respondents' intended use of their land for parking violates the restrictions, to enjoin the use of Respondents' land (but not Appellants' own land) for parking, and to enjoin Respondents from making any nonresidential use of their property. They did not sue the Haupts for conversion of their private dock into a community dock and dedication of a parking easement. Respondents denied Appellants' claims and counterclaimed, requesting a declaration that Cherry Lane is a public road by common law dedication and that none of the parties have the authority to restrict usage of that roadway.

After a bench trial, the court denied Appellants' claims and granted Respondents' counterclaims, finding Cherry Lane is a public road.

**Standing**

Appellants first contend Respondents lacked standing to bring a counterclaim for common law dedication of a road. Appellants do not dispute the sufficiency of the evidence supporting the elements of common law road dedication: the developers "unequivocally

4

intended to dedicate the land to public use" as a road, the road was "accepted by the public," and the road was "used by the public." ***Romano v. Adams***, 691 S.W.3d 328, 334 (Mo.App. S.D. 2024) (quoting ***Whittom v. Alexander-Richardson P'ship***, 851 S.W.3d 504, 507-08 (Mo. banc 1993)).

"Standing, at its most basic level, simply means that the party or parties seeking relief must have some stake in the litigation. In a declaratory judgment action, the plaintiff must have a legally protectable interest at stake in the outcome of the litigation." ***Sunshine & Gov't Accountability Project v. Missouri House of Representatives***, 688 S.W.3d 704, 714 (Mo.App. W.D. 2024) (punctuation and citations omitted). "A legally protected interest necessary for standing to bring a declaratory judgment action means a pecuniary or personal interest directly in issue or jeopardy which is subject to some consequential relief, either immediate or prospective." ***Foster v. Dunklin Cnty.***, 641 S.W.3d 421, 424 (Mo.App. S.D. 2022) (quoting ***Dodson v. City of Wentzville***, 133 S.W.3d 528, 535 (Mo.App. E.D. 2004)).

"Common law dedication awards the public the use of the land in dispute . . . ." ***Whittom***, 851 S.W.2d at 507.

> 'The common-law doctrine of dedication rests on public convenience and has been sanctioned by the experience of ages; it is based on public policy and good faith, in that, while securing to the public only such rights as it has honestly enjoyed or learned to depend on, it takes from the landowner nothing that he did not intend to give.'

***Connell v. Jersey Realty & Inv. Co.***, 180 S.W.2d 49, 52 (Mo. 1944) (quoting 26 C.J.S., Dedication, p. 50, § 2).

At the core of every case brought under a common law road dedication theory is a dispute between two or more parties over use of an existing roadway, frequently brought to a head by

5

restriction of use by barricade or other means. *See, e.g.*, **Whittom**, 851 S.W.2d at 505 (defendants constructed another roadway for plaintiffs' use and barricaded the roadway previously used by plaintiffs to access their subdivision); **Connell**, 180 S.W.2d at 52 (defendants placed private property signs and threatened to close paved roadways and adjacent sidewalks in an established business district); **Romano**, 691 S.W.3d at 332 (defendants erected a gate over the road, restricting longstanding public access to the river for recreation); **Tinnes v. Brand**, 248 S.W.3d 113, 115 (Mo.App. S.D. 2008) (defendants obstructed and removed parts of the road used by the public to access a lakefront resort).

Respondents have a legally protectable interest at stake in their common law dedication counterclaim. Their right to traverse the roadway to access and use their property is in dispute. Respondents and the purchasers of their boat slips want to access their property using Cherry Lane as a public road and have acted accordingly. Appellants claim Cherry Lane is a private road and have acted accordingly: posting a sign that reads "PRIVATE ROAD NO PUBLIC ACCESS," suspending a chain across Cherry Lane to prevent vehicle access, and intervening in Respondents' attempt to secure final permitting for a community dock by asserting, among other things, that Cherry Lane is a private road. This is a relatively typical circumstance in which parties have sought declaratory or injunctive relief to resolve a road use dispute.

Appellants argue that a claim for common law dedication cannot be brought unless the claimant was a party to the developers' dedication of the road, citing **Ruff v. Bequette Constr.**, 662 S.W.3d 90 (Mo.App. E.D. 2023). **Ruff** was a case involving conveyance of development rights, not a developer's transfer of land to the county. **Id.** at 92-94. The plaintiffs in **Ruff** were attempting to block a third party from exercising developer's rights acquired in transactions to

6

which none of the plaintiffs were a party. *Id.* The court rightly held plaintiffs had no legally protectable interest in a contractual transfer of rights to which plaintiffs were not a party, thus they lacked standing to bring a declaratory action challenging that transaction. *Id.* at 100-02. In this case, Respondents are not attempting to assert developer's rights or some other special right or interest under the developers' quitclaim deed. Rather, they rely on the developers' quitclaim deed to the county as evidence to prove: 1) the developers unequivocally intended Cherry Lane to be a public road, and 2) the land comprising Cherry Lane has not been owned individually or collectively by the Turkey Point property owners because the developers quitclaimed that land to the county decades ago. Point I is denied.

**Parking**

Appellants next contend the trial court erred in entering judgment for Respondents on Appellants' petition because the recorded deed restrictions prohibit parking lots.

Whether Respondents' use of their property violates use restrictions is a mixed question of fact and law. *See Pearson v. Koster*, 367 S.W.3d 36, 43-44 (Mo. banc 2012). We must "defer to the factual findings made by the trial court so long as they are supported by competent, substantial evidence, but review *de novo* the application of the law to those facts." *Id.* at 44. (quoting 5 AM. JUR.2D *Appellate Review* § 631 (2012)). Interpretation of a restrictive covenant is a question of law we review *de novo*. *Dash v. Taylor*, 668 S.W.3d 580, 584 (Mo.App. E.D. 2023).

Missouri law "favors untrammeled use of real estate"; thus, restrictive covenants are strictly construed and "will not be extended by implication to include anything not clearly expressed in them." *Id.* at 584-85 (punctuation and citations omitted). "'[I]f there is substantial doubt of their meaning, such doubt should be resolved in favor of the free use of the property.'"

7

*Id.* at 585 (quoting *Shepherd v. State ex rel. State Highway Comm'n*, 427 S.W.2d 382, 387 (Mo. 1968)).

Appellants, as the parties seeking to enforce these restrictions, bore the burden of proving Respondents' use of their real estate violated the restrictions. *Id.* at 584. The burden of proof includes both the burden of production and the burden of persuasion. *White v. Dir. of Revenue*, 321 S.W.3d 298, 304 (Mo. banc 2010).

> [A] fact-finder *always* can disbelieve all or any part of the evidence, just as it always may refuse to draw inferences from that evidence. Credible, believable, even uncontradicted proof of *evidentiary* facts may not prove a contested issue of *ultimate* fact to the fact-finder's satisfaction. A party with the burden of proof cannot merely offer a submissible case; it must convince the fact-finder to view the facts favorably to that party. This is because evidence never proves any element until the fact-finder says it does.

*Black River Elec. Coop. v. People's Cmty. State Bank*, 466 S.W.3d 638, 640 (Mo.App. S.D. 2015) (punctuation and citations omitted).

As in *Black River*, the trial court summarily denied Appellants' claims without making findings of fact. "Without written findings, we lack a nuanced understanding of how the trial court weighed the testimony and evidence on this contested issue." *Id.* Accordingly, we must consider all fact issues as having been found in accordance with the result reached. *Id.*; Missouri Court Rule 73.01(c) (2023).

Appellants failed to meet their burden of proof. Even assuming, *arguendo*, that the restrictions are binding and enforceable, the trial court implicitly found against Appellants on all contested fact issues. The parties with the burden of proof simply failed to convince the trial court to view the facts favorably to their position. The judgment against Appellants on their claims may be affirmed on this basis alone.

8

We also are not convinced, on *de novo* review, that the restrictions relied on by Appellants clearly preclude what Appellants claim they do. As Appellants' witnesses testified, Appellants do not take issue with slip ownership, road usage, easement usage, and parking by Turkey Point property owners and *some* persons who are not Turkey Point property owners, but they do not want to have *another* dock, *more* traffic, and *more* vehicles parked in the neighborhood. While these are valid concerns, the restrictions, when strictly construed as required, do not preclude parking or distinguish between use by property owners and those whose use is by dedicated easement incidental to their ownership of a boat slip.

Furthermore, we are not convinced the restrictions can be enforced by Appellants against Respondents. Turkey Point is not a platted subdivision of record with covenants that are mutually binding on all property owners. It does not have a homeowner's or property owner's association vested with authority to enforce the deed restrictions. The only defined real estate is a metes and bounds description of the individual parcel. This is the only possible antecedent to the attached restrictions' later references to "aforesaid real property" or "said real property." The restrictions include an incomplete or ambiguous enforceability provision, permitting enforcement by persons owning "said real property" or persons owning "any of said lots," without defining what or where a "lot" is.

Appellants' point fails under both *de novo* interpretation of the restrictions and as a failure of proof on the mixed question of fact and law. Point II is denied.

**Witnesses**

In their final point, Appellants claim the trial court abused its discretion in allowing the testimony of three fact witnesses who were not disclosed until hours before trial.

9

A trial court has considerable discretion to admit or exclude evidence at trial. *Hale v. Burlington N. & Santa Fe Ry. Co.*, 638 S.W.3d 49, 63 (Mo.App. S.D. 2021). We will not disturb the trial court's ruling absent a clear abuse of discretion. *Id.* We review for prejudicial error, not mere error. *State v. Brandolese*, 601 S.W.3d 519, 533 (Mo. banc 2020). Thus, even if a trial court errs in admitting evidence, we will not reverse a judgment unless the error "materially affected the merits of the action," *i.e.*, the error was outcome-determinative. *Hale*, 638 S.W.3d at 63.

This was a bench-tried case. Assuming, without deciding, that the trial court erred in permitting these late-disclosed witnesses to testify, "'we generally presume the trial court [did] not give weight to erroneously-admitted evidence unless the trial court relied on the inadmissible evidence in making its findings.'" *Kenney v. Myers*, 674 S.W.3d 139, 146 (Mo.App. W.D. 2023) (quoting *State v. Coaston*, 609 S.W.3d 527, 528 (Mo.App. S.D. 2020)). To overcome this presumption, Appellants must show the trial court made "a 'clear and obvious statement of reliance' on the challenged testimony[.]" *King v. State*, 682 S.W.3d 853, 861 (Mo.App. S.D. 2024) (quoting *State v. Ernst*, 164 S.W.3d 70, 75 (Mo.App. S.D. 2005)). This is a high standard to satisfy: "[I]t is nearly impossible to obtain a reversal based upon the improper admission of evidence in a court-tried case." *Kenney*, 674 S.W.3d at 146 (punctuation omitted) (quoting *Coaston*, 609 S.W.3d at 528).

Appellants attempt to show prejudice[1] from the testimony of only one of the witnesses,

---

[1] We reject Appellants' argument that prejudice may be inferred because Appellants previously had requested the identity of Respondents' trial witnesses and the trial court's decision cuts against the purpose of discovery rules. Appellants do not cite to the portion of the record on appeal that would support their claim that they asked for the identity of Respondents' witnesses in discovery. Even if they had, our standard of review would be the same: the trial court has broad discretion to admit or exclude the testimony of witnesses not properly disclosed in interrogatory responses, we presume the trial court's ruling is correct, and appellant bears the burden to prove both error *and* prejudice. *Tate v. Dierks*, 608 S.W.3d 799, 803, 807-08 (Mo.App. W.D. 2020).

10

the county assessor, whose testimony the trial court expressly disregarded. The other two witnesses, not owners of property in Turkey Point, testified that they had driven vehicles on Cherry Lane over the years. Appellants cannot show prejudice from this testimony, because it was cumulative to other, properly admitted testimony and evidence. *See Hale*, 638 S.W.3d at 63. Appellants' own witness, a road commissioner, testified he and the public drove on Cherry Lane.

We deny Point III and affirm the judgment.

JACK A. L. GOODMAN, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS